STATE OF NORTH CAROLINA v. LAUNA IONIA HARGETT
GREENE AND DOUGLAS DONALD DONNELL

No. 90

(Filed 1 July 1974)

**1. Criminal Law § 21— preliminary hearing — necessity**

A preliminary hearing is not an essential prerequisite to the finding of an indictment in this jurisdiction.

**2. Criminal Law § 99— expression of opinion by trial judge**

The provisions of G.S. 1-180 may be violated at any stage of the trial by comments on the testimony of a witness, by remarks which tend to discredit a witness, by imbalancing the evidence in the charge to the jury or by any other means which intimate an opinion of the trial judge in a manner which would deprive an accused of a fair and impartial trial before the jury; however, in the exercise of his duty to supervise and control the course of a trial so as to insure justice for all parties, the court may interrogate a witness for the purpose of clarifying his testimony, and it is the duty of the trial judge to control the examination and cross-examination of witnesses.

**3. Criminal Law § 99— remarks of trial judge — burden of showing prejudice**

An accused is not entitled to a new trial because of remarks of the trial judge unless they tend to prejudice defendant in light of the circumstances in which they were made, and the burden of showing that he has been deprived of a fair trial by such remarks is upon defendant.

**4. Criminal Law § 88— scope of cross-examination — restriction proper**

Defendant was not prejudiced where the trial judge restricted that portion of the cross-examination which sought to have an untrained witness distinguish between felonies and misdemeanors, or where the judge allowed an assistant solicitor to relate a witness's additional convictions, since the witness was a prisoner at the time he testified and he had already admitted to extensive criminal activities.

**5. Criminal Law § 99— admonition by trial judge to witness — no expression of opinion**

Where the trial judge told a witness, "Listen, you don't have to talk like that," the remark was simply an admonition to the witness to give serious and responsive answers to questions put to him, and it did not reflect on the witness's credibility or amount to an expression of opinion as to the weight of the evidence.

**6. Criminal Law § 87— leading question — definition**

A leading question is one which suggests the answer desired and is a question which may often be answered by yes or no.

**7. Criminal Law § 87— leading questions — discretion of trial court**

It is generally recognized that an examining counsel should not ask his own witness leading questions on direct examination; however,

State v. Greene

it is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal.

8. **Criminal Law § 87— leading questions — guidelines for allowance**

Counsel should be allowed to lead his witness on direct examination when the witness (1) is hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance, or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness's recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers, and (8) the mode of questioning is best calculated to elicit the truth.

9. **Criminal Law § 87— leading questions allowed — no abuse of discretion**

The trial court did not abuse its discretion in allowing the solicitor to ask leading questions of two State's witnesses.

10. **Criminal Law § 89— bad character — showing by specific acts improper**

The general rule is that the State cannot show bad character by specific acts, and the solicitor may not place before the jury incompetent or prejudicial matters not legally admissible in evidence by the use of insinuating questions.

11. **Criminal Law §§ 96, 169— improper questions — objections sustained — evidence of like import subsequently admitted**

Where not more than three questions were directed to State's witnesses concerning one defendant's complicity in the drug traffic and defense counsel's objections were sustained as to each question in the presence of the jury so that the jury must have known that the questions were not for their consideration, defendant was not prejudiced by the trial court's failure to instruct the jury to disregard the questions asked by the solicitor; furthermore, any prejudice which might have arisen because the jury heard the unanswered questions was rendered harmless by the subsequent admission without objection of evidence of like import to that which the solicitor had apparently sought to elicit.

APPEAL by defendants Launa Ionia Hargett Greene and Douglas Donald Donnell from *Copeland, S.J.,* 5 November 1973 Session of GUILFORD Superior Court.

Defendants were originally charged upon warrants issued by the District Court Division with the crimes of murder, conspiracy to murder and kidnapping. A nol pros with leave was taken as to each defendant, over his objection, as to the charges contained in the warrants, and bills of indictment charging the same crimes were returned by the grand jury.

Each defendant was charged in separate indictments, proper in form, with murder, kidnapping and conspiracy to commit murder.

Upon arraignment, the District Attorney announced in open court that he would not seek a conviction of murder, but would seek a conviction of the offense of accessory before the fact to murder.

Each defendant entered a plea of not guilty to the charges contained in the respective bills of indictment.

The State's motions to join the defendants and consolidate the cases for trial were allowed over the objections of both defendants.

The evidence for the State, in summary, tends to show:

Danny Edward Cobb (hereafter referred to as Cobb) testified that on 9 April 1973 he was at the Guilford County Courthouse awaiting the call of a case in which he was involved. He was approached by Launa Hargett Greene (hereafter referred to as Greene) and Douglas Donald Donnell (hereafter referred to as Donnell). Mrs. Greene questioned Cobb about his alleged indebtedness to her for some $1,500 worth of merchandise taken out of her house by his son-in-law. After a scuffle Greene and Donnell left.

A short time later Cobb and Bernadett Means (hereafter referred to as Means) were attempting to start Cobb's automobile when Donnell appeared armed with a pistol. Donnell accused Cobb of "snitching" to the police about his dealings in narcotics and at gunpoint forced Cobb and Means into Cobb's automobile. Pursuant to Donnell's orders, they proceeded to an isolated area outside Greensboro. Greene followed in her automobile. There, Donnell demanded the $1,500 and fired a shot near Cobb. Mrs. Greene also fired a shot in the air with a .45 Colt pistol. Greene and Donnell consented to take Cobb to his mother's home when he stated that he could there obtain the money. Upon arrival Cobb obtained and confronted Donnell with a pistol. A struggle ensued during which several shots were fired. Cobb secured the pistol and shot Donnell in the leg. Donnell was also "grazed" on the head by a bullet as he and Greene fled.

Shortly after this incident Cobb began serving an active prison sentence for an unrelated crime.

, : Brenda Diane Isley Lindsay (hereafter referred to as Lindsay) testified that she was the sister of Douglas Donnell. She stated that she visited her brother in the hospital where he was recovering from the bullet wound inflicted by Cobb. Donnell wanted to "get Cobb," and she mentioned that she knew a man named Dwayne Maxwell who could help out. In Greene's presence Donnell gave her $100 to pay Maxwell to kill Cobb. She gave Maxwell $80 of the money. On the following day both defendants asked her if she had contacted Maxwell. Shortly thereafter they learned that Cobb had been imprisoned, and Mrs. Lindsay testified that she was present when Greene and Donnell discussed killing Cobb's mother in order to kill Cobb when he attended her funeral. Mrs. Greene gave her an additional $200 to hire Maxwell to kill Mrs. Cobb. She thereafter saw Greene gave Maxwell a gun to be used in killing Mrs. Cobb.

Dwayne Maxwell testified that he shot Mrs. Cobb. He stated that he was approached by Mrs. Lindsay who offered him a job which he believed to involve the sale of narcotic drugs. He accepted, and she gave him $80. Subsequently Mrs. Lindsay introduced him to Greene and Donnell at which time Greene gave him an additional $100 and told him she would let him know about the job. Later in Donnell's presence, Greene told him that she wanted him to kill Cobb because Cobb had shot Donnell. Maxwell declined, and Greene demanded return of the money that she had paid him. Maxwell could not refund the money, and Greene gave him a gun, informing him that Cobb would be in court on that day. Maxwell went to court, but Cobb did not appear. The next day Maxwell met with Greene who told him she wanted him to kill Cobb's mother so Cobb would come to his mother's funeral. The following day Lindsay showed Maxwell where Mrs. Cobb lived.

Maxwell, armed with a knife, went to Mrs. Cobb's home on the pretext of inquiring about her son. He left because he could not bring himself to cut her. He then went to Donnell's house, and Donnell gave him a .38 pistol. Maxwell then returned to Mrs. Cobb's residence and shot Mrs. Cobb with the pistol. The next morning he approached Greene and Donnell for more money and received $25 from Donnell and $35 from Greene.

After the shooting he again met with Greene and Donnell, and further plans were made to kill Cobb when he attended his mother's funeral. Greene pointed out a bridge from which he could do the shooting, and Donnell gave him a rifle with a tele-

scopic sight. However, on the day of the funeral he did not attempt to kill Cobb and did not approach the cemetery. He shot Mrs. Cobb because he was afraid he would be killed if he didn't kill her.

Dr. W. W. Forrest, an expert pathologist, testified that Mrs. Cobb died from a gunshot wound which pierced her left lung.

At the close of the State's evidence each defendant moved for dismissal of all charges. The motions were denied.

Defendant Greene presented twenty-five witnesses who testified as to her good character.

Defendant Greene testified that on the afternoon of 9 April 1973 Donnell called her to pick him up at Cobb's mother's residence. When she arrived there Donnell tried to wave her off but she managed to pick him up. Cobb shot into her windshield before she was able to get away. Donnell told her that Cobb had shot him. She took Donnell to his sister's house and left. She testified that she did not kidnap Cobb and that she had not procured, counseled or paid any money to Dwayne Maxwell or any other person to kill Danny Edward Cobb or Nellie Marie Cobb.

Defendant Donnell testified in his own behalf. He stated that on 9 April 1973 he spoke to Cobb in the Guilford County Courthouse about the $1,500 Cobb allegedly owed Donnell's sister. He subsequently went with Cobb and Means to Cobb's mother's residence to receive this money. There Cobb confronted him with a gun and they began wrestling over it. During the struggle he fell, and Cobb shot him. He tried to run and Cobb shot again and the bullet glanced off his head. Mrs. Greene drove up and he got in her car. Cobb shot at her, but the bullet hit the hood and glanced off the car window. Greene took him to his sister's house and he later went to the hospital. He admitted telling his sister that if he were paralyzed he would kill Danny Cobb, but that he was no longer angry when he was able to leave the hospital. He did not know Dwayne Maxwell; he never gave his sister money for a gun or any other purpose; he did not take part in any plan to kill Danny Edward Cobb; and he did not kidnap Cobb or Means. He further testified that he never saw Mrs. Greene give Maxwell a gun or money.

Mrs. Gertrude Donnell Isley, the mother of Douglas Donnell, testified that on the night Mrs. Cobb was shot her son did not leave the house between the hours of 6:00 p.m. and 10:20 p.m. Maxwell did not come to see her son during that time.

On rebuttal the State introduced the testimony of three Greensboro police officers to the effect that Mrs. Greene's character and reputation were bad.

The jury returned a verdict of not guilty as to the kidnapning charges.

The jury found both defendants guilty of accessory before the fact to murder and conspiracy to murder.

Defendant Greene appealed from sentences of imprisonment for the term of her natural life for the offense of accessory before the fact to murder, and imprisonment for a term of ten years for the offense of conspiracy to murder.

Defendant Donnell appealed from sentences of imprisonment for the term of his natural life for the offense of accessory before the fact to murder, and imprisonment for the term of not less than five years nor more than seven years for the offense of conspiracy to murder.

We allowed motion to bypass the Court of Appeals on the charges of conspiracy to commit murder.

*Attorney General Robert Morgan by Assistant Attorney General Thomas B. Wood for the State.*

*Comer and Dailey by John T. Comer for defendant appellants.*

BRANCH, Justice.

Defendants assign as error the denial of their motions for preliminary hearings upon warrants and bills of indictment charging each of them with kidnapping, conspiracy to commit murder and murder.

[1]   Whether an accused is entitled to a preliminary hearing as a matter of right was considered in the case of *State v. Hargett*, 255 N.C. 412, 121 S.E. 2d 589. There, Justice Moore speaking for the Court stated:

" . . . A preliminary hearing is not an essential prerequisite to the finding of an indictment in this jurisdiction. 'We have

no statute requiring a preliminary hearing, nor does the State Constitution require it. It was proper to try the petitioner upon a bill of indictment without a preliminary hearing.' *State v. Hackney,* 240 N.C. 230, 237, 81 S.E. 2d 778. See also *State v. Doughtie,* 238 N.C. 228, 232, 77 S.E. 2d 642; *State v. Cale,* 150 N.C. 805, 808, 63 S.E. 958. If defendant was at a disadvantage in preparing for trial through ignorance of the nature of the evidence against him, ample remedies were available to him. He might have obtained a hearing at any time by petition for *habeas corpus.* In fact, he requested and obtained a bill of particulars. The ruling on the motion was proper."

This Court has consistently adhered to the principles stated in *Hargett. State v. Harrington,* 283 N.C. 527, 196 S.E. 2d 742; *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320; *State v. Howard,* 280 N.C. 220, 185 S.E. 2d 633; *Gasque v. State,* 271 N.C. 323, 156 S.E. 2d 740.

We have carefully considered defendants' arguments that we should change this well recognized rule because it contravenes modern notions of due process and fair trial. We do not agree. There are ample provisions in our system of criminal procedure and practice to enable an accused to prepare for his defense without aid of a preliminary hearing. Further, defendants fail to show that they were taken by surprise or that their defense was prejudiced by the Court's ruling.

This assignment of error is overruled.

By Assignments of Error Numbers 3, 4 and 12 defendants contend that the trial judge violated the provisions of G.S. 1-180 by expressing opinions and by unduly restricting their right of cross-examination.

G.S. 1-180 provides:

"*Judge to explain law, but give no opinion on facts.*— No judge, in giving a charge to the petit jury in a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury, but he shall declare and explain the law arising on the evidence given in the case. He shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; provided the judge shall give equal stress to the State and defendant in a criminal action."

The duty of the trial judge to abide by the provisions of former § 535 *Revisal of 1905,* now substantially codified as G.S. 1-180, was eloquently stated by Justice Walker in the case of *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855:

> " . . . The judge should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge,' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged. . . . "

[2]   The provisions of G.S. 1-180 may be violated at any stage of the trial by comments of the testimony of a witness, by remarks which tend to discredit a witness, by imbalancing the evidence in the charge to the jury or by any other means which intimates an opinion of the trial judge in a manner which would deprive an accused of a fair and impartial trial before the jury. *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481; *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412. However, in the exercise of his duty to supervise and control the course of a trial so as to insure justice for all parties, the Court may interrogate a witness for the purpose of clarifying his testimony, *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376; *Andrews v. Andrews,* 243 N.C. 779, 92 S.E. 2d 180, and it is the duty of the trial judge to control the examination and cross-examination of witnesses. *United States v. Coplon,* 185 F. 2d 629; *State v. Frazier,* 278 N.C. 458, 180 S.E. 2d 128; *State v. Wright,* 274 N.C. 380, 163 S.E. 2d 897; *Greer v. Whittington,* 251 N.C. 630, 111 S.E. 2d 912, and *State v. Stone,* 226 N.C. 97, 36 S.E. 2d 704.

[3]   An accused is not entitled to a new trial because of remarks of the trial judge unless they tend to prejudice defendant in light of the circumstances in which they were made, and the burden of showing that he had been deprived of a fair trial by such remarks is upon the defendant. *State v. Green,* 268 N.C. 690, 151 S.E. 2d 606; *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769; *State v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508; *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9.

We consider these assignments of error in light of the above stated principles of law.

**[4]**  During the course of his cross-examination the witness Danny Cobb admitted that he had been convicted of the "marijuana tax" in 1958 and that in 1970 he was convicted of possession of methadone. Defense counsel thereupon asked the witness what methadone was, and the trial judge sustained the State's objection. Thereafter the witness admitted that he had been convicted of felonious possession of a firearm. When defense counsel inquired as to what other *felonies* the witness had been convicted of, the trial judge observed that counsel was getting into the field of law and that he should restrict this line of questioning to the crimes of which the witness had been convicted. When defense counsel again pursued his cross-examination concerning prior convictions, the witness professed to be puzzled by the meaning of the word "convicted." At this point Judge Copeland said:

> "Just a minute. The District Attorney has stated that he would stipulate to everything that this witness has been convicted or pled guilty to, or of which he has knowledge."

An assistant prosecuting attorney then stated that to his knowledge the witness had been convicted of felonious possession of a hand gun, possession of heroin and that both of these cases were on appeal. Also on appeal was another case in Cumberland County for possession of heroin.

Defendants strenuously argue that by these statements and rulings, the trial judge improperly limited and frustrated their right to cross-examination and expressed an opinion detrimental to them.

Considering the witness' prior admission that it was a crime to possess methadone, we see no relevancy or purpose in allowing defendants' counsel to elicit evidence as to the other characteristics of the drug.

It was also reasonable and proper for the trial judge, in the exercise of his duty to control the course of the trial, to restrict that portion of the cross-examination which sought to have an untrained witness distinguish between felonies and misdemeanors. Neither do we discern that prejudicial error resulted because Judge Copeland allowed an Assistant Solicitor to relate Cobb's additional convictions in light of the facts that the witness was a prisoner at the time that he testified and that he had already admitted to extensive criminal activities.

The witness was fully revealed to the jury as a repeated criminal offender, and defense counsel's attempts to discredit and impeach the witness were not frustrated by the remarks and rulings of the trial judge.

We hold that defendant has failed to carry the burden of showing prejudice in these rulings and statements of the trial judge.

By Assignment of Error Number 12 defendant again contends that the trial judge made a comment amounting to an expression of opinion which denied him a fair trial.

[5]   Defendant Donnell, testifying in his own behalf, stated that on 9 April 1973 he went to the home of Danny Edward Cobb's parents to collect a debt, and while there he was shot in the leg by Danny Cobb. Defendants introduced into evidence the pants which Donnell was allegedly wearing when he was shot and Donnell pointed out the hole in the clothing which he stated was caused by the shot.

On cross-examination, the District Attorney inquired about the severity of the wound, and the following exchange occurred:

Donnell: "I didn't say how bad I was shot. The pants speak for themselves.

Q. Tell the jury where the blood is.

A. In my leg.

COURT: Listen, you don't have to talk like that."

Aside from a ruling on the admission of evidence, the words complained of in this Assignment of Error were the only utterances made by the trial judge during Donnell's direct examination and cross-examination. The words appear to be simply an admonishment to the witness to give serious and responsive answers to questions put to him. Such comment was made pursuant to the trial judge's duty to insure proper decorum in the courtroom and an orderly trial. There was nothing in the Judge's statement which reflected upon the credibility of the witness or which amounted to an expression of opinion as to the weight of the evidence.

This assignment of error is overruled.

Defendants next contend that prejudicial error resulted from the trial judge's rulings permitting the Solicitor to interro-

gate two State's witnesses by asking questions which they contend were leading.

[6, 7] It is generally recognized that an examining counsel should not ask his own witness leading questions on direct examination. A leading question has been defined as one which suggests the answer desired and is a question which may often be answered by yes or no. *State v. Price,* 158 N.C. 641, 74 S.E. 587; 1 *Stansbury's North Carolina Evidence* § 31 (Brandis Revision 1973) ; 58 Am. Jur. *Witnesses,* § 569 (1948) ; *McCormick's Handbook of the Law of Evidence* § 6 (2d ed. 1972) ; 2 *Wharton's Criminal Evidence* § 411 (13th ed. Charles E. Torcia 1972). The rule prohibiting leading questions is not based on a technical distinction between direct examination or cross-examination, but on the alleged friendliness existing between counsel and his witness. It is said that this relationship would allow the examiner to provide a false memory to the witness by suggesting the desired reply to his question. *United States v. Durham,* 319 F. 2d 590; 1 *Stansbury's North Carolina Evidence* § 31 (Brandis Revision 1973) ; 98 C.J.S. *Witnesses* §§ 329, 330 (1957). However, it is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; *State v. Clanton,* 278 N.C. 502, 180 S.E. 2d 5; *State v. Painter,* 265 N.C. 277, 144 S.E. 2d 6; *State v. Pearson,* 258 N.C. 188, 128 S.E. 2d 251; 2 *Wharton's Criminal Evidence* § 411 (13th ed. Charles E. Torcia 1972).

[8] The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of

State v. Greene

questioning is best calculated to elicit the truth. *State v. Johnson,* 272 N.C. 239, 158 S.E. 2d 95; *State v. Pearson, supra;* 58 Am. Jur. *Witnesses,* § 570 (1948) ; 1 *Stansbury's North Carolina Evidence* § 31 (Brandis Revision 1973) ; 98 C.J.S. *Witnesses* § 331 (1957) ; 2 *Wharton's Criminal Evidence* § 412 (13th ed. Charles E. Torcia). .

[9] Examination of the challenged rulings does not convince us that this questioning falls within the traditional abuse of suggesting answers or asking questions designed to secure a yes or no answer. It could just as easily be said that the District Attorney sought to direct the witness' attention to the matters at hand in a manner best calculated to elicit truth and expedite the trial. Furthermore, in deciding these questions, we must be advertent to the fact that because of his opportunity to observe the witnesses and because of his knowledge of the circumstances of the particular case, the trial judge is in better position than an appellate court to decide the proper course of a trial so as to establish the truth and protect the rights of an accused. *State v. Pearson, supra.*

We cannot say from our examination of this record that the trial judge abused his discretion or deprived defendants of a fair trial by the rulings here challenged. .

Defendants assign as error the failure of the trial judge to timely sustain objections to questions addressed to the witness Lindsay and to, *ex mero motu,* instruct the jury to disregard the questions posed to witnesses Lindsay and McMillan. On redirect examination of the witness Lindsay by the District Attorney the following occurred:

"Q. Now, I want—there's been right many questions put to you on cross-examination about narcotics traffic and Danny Cobb, and I want to ask you what, if anything, you know about Launa Hargett Greene's relationship to Danny Cobb and the dope traffic? .

Mr. Comer: I object.

Court: Come up here a minute. (Conference at the bench.)

Court: Objection Sustained for the time being."

Thereafter the witness Lindsay was recalled and the following colloquy took place:

"REDIRECT EXAMINATION (By Mr. Albright)

Q. Mrs. Lindsay, what occasion, if any, have you had to purchase narcotic drugs from the defendant, Launa Hargett Greene?

MR. COMER: OBJECTION.

COURT: Step up here a minute.
(Conference at the bench.)

COURT: The objection is SUSTAINED."

On rebuttal the District Attorney questioned Detective Norwood McMillan concerning the character and reputation of the defendant Greene, and the witness started to answer in a nonresponsive manner. At that point the record reveals the following:

"MR. COMER: OBJECTION.

COURT: Did you say you knew her reputation?

WITNESS: Yes.

COURT: Your answer will be good, bad, or you don't know, and if you need to, you can explain your answer.

A. (BY THE WITNESS) It's bad.

Q. In what respect?

MR. COMER: OBJECTION.

COURT: SUSTAINED."

[10, 11] The general rule is that the State cannot show bad character by specific acts, *State v. Davis,* 259 N.C. 138, 129 S.E. 2d 894; *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1; *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107; *State v. King,* 224 N.C. 329, 30 S.E. 2d 230, and the District Attorney may not place before the jury incompetent or prejudicial matters not legally admissible in evidence by the use of insinuating questions. *State v. Phillips,* 240 N.C. 516, 82 S.E. 2d 762. Defendants argue that the District Attorney sought to offer specific acts of misconduct by cross-examination in order to show the bad character of defendant Greene and that after sustaining the objections of

State v. Greene

the defense counsel, the trial judge should have instructed the jury to disregard the questions asked by the District Attorney.

The question here considered is similar to the one presented by an *unresponsive answer* in the case of *Moore v. Insurance Company*, 266 N.C. 440, 146 S.E. 2d 492. There the witness unresponsively answered a question proper in form, and the Court allowed defense counsel's Motion to Strike. Finding the nonresponsive answer to be nonprejudicial the Court speaking through Justice Lake stated:

"Although the proper procedure, upon allowing a motion to strike an answer not responsive to the question, is for the court immediately to instruct the jury not to consider the answer, we think that the failure to do so in this instance, in view of the court's prompt allowance of the motion to strike, is not prejudicial error. The jury could only have interpreted the ruling of the court as meaning that the answer given by the witness was not to be regarded as evidence in the case."

Defendants, relying heavily on *State v. Phillips, supra,* contend that the *posing* of the questions resulted in prejudicial error. In *Phillips,* the Court found prejudicial error in the cross-examination by the Solicitor upon a factual situation in which the Solicitor asked *defendant* at least 32 questions which contained improprieties ranging from assuming defendant's guilt of collateral offenses by insinuation to framing questions which in advance asserted the untruth of defendant's subsequent denials. In *Phillips* the Solicitor capped his cross-examination by, in effect, personally vouching for the truth of the State's allegations.

The facts in instant case are a far cry from those in *Phillips.* Here not more than three questions were directed to *State's witnesses* concerning defendant Greene's complicity in the drug traffic. Defense counsel's objections were sustained as to each question in the presence of the jury so that the jury must have known that the questions were not for their consideration. There was no harassment or vilification of defendant or her witnesses.

Thereafter evidence of like import to that which the District Attorney apparently sought to elicit was admitted, without objection, when the witness Maxwell stated:

" . . . I met Launa Hargett Greene at Douglas Donnell's house. Diane told me Launa wanted to see me—she figured she knew where I could get drugs. . . . "

The admission of testimony over objection is ordinarily harmless when testimony of like import is thereafter introduced without objection. *State v. Creech,* 265 N.C. 730, 145 S.E. 2d 6; *State v. Gaskill,* 256 N.C. 652, 124 S.E. 2d 873. Certainly the subsequent admission of testimony, without objection, obviously of like import to that which the District Attorney unsuccessfully sought to elicit from the witnesses would render harmless any prejudice which might have arisen because the jury heard the unanswered questions.

We do not deem it necessary to further discuss defendants' contentions concerning the testimony of the witness McMillan. Suffice it to say that Judge Copeland's ruling was correct and for reasons stated above his failure to instruct the jury concerning the Solicitor's further inquiry was not prejudicial error.

Even had there been error in these challenged evidentiary rulings, we are of the opinion that the State's evidence was so convincing that there is no reasonable possibility that the matters here complained of might have contributed to defendants' conviction. *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229; *State v. Humphrey,* 283 N.C. 570, 196 S.E. 2d 516; *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145; *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677. This complicated and vigorously contested case consumed five days of trial time. In such cases it is a real and accepted fact that an accused cannot be guaranteed a perfect trial. He is guaranteed a fair trial.

Our examination of this entire record discloses that defendants received a fair trial, free from prejudicial error.

No error.