STATE OF NORTH CAROLINA v. LARRY DALE HOPKINS AND VIRGINIA LEWIS PETTY HOPKINS

No. 58

(Filed 16 March 1979)

### 1. Criminal Law § 87.1— leading questions proper

In a prosecution for armed robbery, felonious larceny of an automobile, and kidnapping, the trial court did.not err in allowing the State to use leading questions during the direct examination of the main prosecuting witness since the witness had trouble understanding the gist of the questions posed to him by the State, and the answers he gave were often cursory and unresponsive.

### 2. Criminal Law § 34.4— subsequent offenses by defendants—admissibility of evidence

In a prosecution for armed robbery, felonious larceny of an automobile, and kidnapping, the trial court did not err in allowing testimony concerning offenses which defendants allegedly committed in Tennessee some four hours after the crimes for which they were being tried occurred, since the testimony complained of was introduced as the State was trying to show the circumstances under which the victim's car, which was the subject of the automobile larceny charges, and two guns, which were directly involved in the armed robbery charges, were recovered, and this testimony was essential to show that the objects at trial were the same as those involved in the crimes in question before the State could introduce the photographs of the car and guns themselves into evidence.

### 3. Searches and Seizures § 8— search of defendant several hours after arrest—search incident to arrest—probable cause

Officers had probable cause to search the female defendant where, upon arrest of the defendants, Tennessee authorities searched the male defendant and seized one gun; a visual search of the female defendant yielded nothing; a deputy sheriff from N.C. went to Tennessee later the same morning and informed officers that he had reason to believe the defendants had two guns; and the female defendant was then searched more fully and a gun was found concealed in her blouse. Moreover, the circumstances were such that it was impractical to obtain a search warrant, and the fact that the search was made some six or seven hours after the female defendant was arrested did not make it too remote in time or place to be a search incident to a lawful arrest.

### 4. Criminal Law § 88.1— cross-examination limited—questions answered anyway—defendants not prejudiced

Defendants were not prejudiced by the trial court's sustaining of the State's objections to defense counsel's questioning of the prosecuting witness since the witness answered most of the questions anyway, no motion was made to strike, and defendants therefore had the practical benefit of the evidence.

**5. Criminal Law § 166— the brief—factual summary required**

An appellant should include in his brief a non-argumentative factual summary in addition to a concise statement of the case dealing with the procedural posture of the case. Rules of Appellate Procedure 28(b)(2).

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by defendants from the judgment of *Howell, J.,* entered in the 15 December 1977 Session of WATAUGA County Superior Court. This case was docketed as Number 18 in the Fall Term 1978.

The defendants were each charged, in separate indictments, proper in form, with armed robbery, felonious larceny of an automobile and kidnapping. Both defendants entered pleas of not guilty as to all the charges. The cases were consolidated for trial with the consent of the parties.

At trial the evidence for the State tended to show the following:

On 26 May 1977, around 11:00 p.m., Howard Miller was returning home from a friend's house in his 1965 Pontiac. The defendants were parked in a red Mustang on the road in front of Mr. Miller's house. Mr. Miller knew both the defendants. In the past he had dated the female defendant [hereinafter referred to as defendant Virginia].

Mr. Miller stopped his car beside the Mustang because the road was too narrow for two cars to pass. Defendant Virginia asked, "Are you Howard Miller?" and he indicated that he was. Defendant Larry Hopkins [hereinafter referred to as defendant Larry] came over to the driver's side of Mr. Miller's car and placed a .22 caliber pistol at his head. He got into the car and ordered Mr. Miller to turn his car around and drive down the road. Defendant Virginia followed them in the Mustang.

Defendant Larry then made Mr. Miller stop the car, get into the Mustang and drive down the road. He ordered Mr. Miller out of the car, and defendant Virginia pointed a .25 caliber pistol at him and demanded that he give her his money. He gave her $6.00, which was all he had, "because I [Mr. Miller] was afraid not to." Defendant Virginia then stated that she had to borrow $75.00 and

would make Howard Miller borrow it. Mr. Miller said that he would go to Archie Roark's house and try to borrow the money.

The two defendants and Mr. Miller drove the Pontiac and the Mustang to Mr. Roark's house. Mr. Miller alone went into the house and told Mr. Roark and his wife what had happened. Defendant Virginia came into the house and asked Howard Miller to go with her. He refused. Defendant Larry came in and got defendant Virginia, and they drove away in both Mr. Miller's car and the Mustang. Mr. Miller then contacted the police and told them what had happened.

Mr. and Mrs. Roark both corroborated the portion of the story that concerned them. They stated that Howard Miller appeared nervous and upset when he was at their home. A deputy sheriff of Watauga County also testified. He had talked with Mr. Miller on 27 May 1977 between 2:00 and 3:30 a.m. The officer recounted what Howard Miller had told him on that date, which was virtually identical to what Mr. Miller testified at trial.

On 27 May 1977 at about 4:35 a.m., Mike Donally, a detective with the Elizabethton Police Department went to the Rainbow Restaurant in Elizabethton, Tennessee to investigate a complaint about a man with a gun. He saw both defendants sitting in a booth in the restaurant, and he noticed a pistol sticking out of defendant Larry's waistband. Defendant Larry was arrested for public drunkenness and for possessing a weapon for the purpose of going armed; defendant Virginia was arrested for public drunkenness. Eventually two guns, a .22 caliber pistol and a .25 caliber pistol, were seized from defendants' persons. A 1965 blue Pontiac bearing a North Carolina license plate, later identified as Mr. Miller's car, was parked in front of the restaurant.

Later that morning, at about 6:30 a.m., defendant Larry called Jerry Vaughn, a deputy sheriff of Watauga County. He asked him to contact defendant Virginia's mother and have her bring $200 to the Elizabethton Police Department to get defendants out of jail on bond. Detective Vaughn and another officer went to Elizabethton and brought the defendants back to North Carolina because of warrants outstanding against them for auto larceny, armed robbery and kidnapping.

The evidence for defendants tended to show the following:

Lizzie Ellison, defendant Virginia's mother, testified that Howard Miller came to her home on 26 May 1977 at about 6:00 or 6:30 p.m. and asked for defendant Virginia. Mrs. Ellison told Mr. Miller that defendant Virginia was married and did not live there anymore; she told him to leave her daughter alone. Mr. Miller had previously been to Mrs. Ellison's home looking for defendant Virginia. Another witness, Lois Miller, testified that on 26 May 1977 Howard Miller came to her house and asked for defendant Virginia.

The two guns that were taken from defendants in Tennessee belonged to defendant Virginia but were kept at her mother's house. Mrs. Ellison last saw them in her house on 26 May 1977 at approximately 10:00 p.m. before going to work. When she returned the next morning, both guns were gone.

On 26 May 1977, at about 9:30 p.m., both defendants went to the home of Earl Lewis, defendant Virginia's father. They were having trouble with the lights and the rear tires of their Mustang. They left Mr. Lewis' home, which is approximately fifteen miles from Howard Miller's house, around 11:00 p.m. in their car.

Defendant Virginia took the stand. She testified that on 26 May 1977 she and defendant Larry, her husband, were at her mother's house around 7:00 p.m., and her mother told her that Howard Miller had been looking for her. The defendants left there and went to visit some of defendant Larry's relatives. At about 9:00 p.m. they went to the home of defendant Virginia's father so that he could fix the lights on their car.

Thereafter defendants went to Howard Miller's house because they knew he was looking for defendant Virginia and because they wanted to ask him about getting some new tires for their car. Neither defendant had any weapons at that time.

After Howard Miller returned home, the two defendants got into his car with him and the three of them talked and drank some beer. Mr. Miller took a piece of tinfoil out of his wallet, said it was LSD and asked defendant Larry if he wanted some. He refused. Mr. Miller then consumed two or three pills from another container which he claimed to be nerve pills he had gotten from his doctor.

The defendants asked Mr. Miller about some tires for their car, and he told them they could buy some inexpensive ones at a service station in Mountain City, Tennessee. Mr. Miller offered to loan the defendants his car to drive there, but he wanted it back in two hours.

Defendant Virginia then asked Mr. Miller if he could loan them some money, and Mr. Miller said yes but he only had $6.00. The defendants took the money and put some tools in Mr. Miller's car "to stand good for the money." Defendant Virginia mentioned that she needed to borrow $75.00, and Mr. Miller suggested that maybe he could borrow it from Archie Roark.

As the defendants and Howard Miller were going to Mr. Roark's house, Mr. Miller "was acting like he was scared or something. I [defendant Virginia] don't know what was wrong with him." Mr. Miller went into the house and then defendant Virginia went in to see if she could take him home. Mr. Miller refused, so the defendants left and took his car "because [Mr. Miller] had told us that we could borrow the car." Defendant Virginia denied that either defendant had a gun in Howard Miller's presence, took any money from him at gunpoint or held him against his will.

Thereafter the defendants went to the home of defendant Virginia's mother and got two guns, a .22 caliber pistol and a .25 caliber pistol. They wanted to have one gun for protection and the other one to sell if necessary. They drove to Tennessee but got lost and could not find the service station Mr. Miller had earlier described. The defendants were unable to return Mr. Miller's car to him within the time he specified because they were picked up by policemen in Elizabethton, Tennessee.

As to each defendant, the trial judge submitted the charges of armed robbery, felonious larceny of an automobile and kidnapping to the jury. The jury found both defendants guilty of armed robbery and felonious auto larceny and not guilty of kidnapping. Each defendant received a sentence of life imprisonment on the armed robbery conviction and a sentence of imprisonment for ten years on the auto larceny conviction, to run concurrently with the life imprisonment sentence. The defendants appealed to this

Court on their armed robbery convictions, and we granted their motions to bypass the Court of Appeals on their auto larceny convictions.

Other facts relevant to the decision will be related in the opinion below.

*James M. Deal, Jr., for defendant Larry Dale Hopkins.*

*Stacy C. Eggers III, for defendant Virginia Lewis Petty Hopkins.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood, for the State.*

COPELAND, Justice.

For the reasons stated below, we find no error in defendants' trial.

[1]    In their first assignment of error, defendants claim the trial court erred in allowing the State to use leading questions during the direct examination of Howard Miller, the main prosecuting witness.

The general rule in North Carolina is that a party cannot use leading questions during direct examination of his own witness. *See, e.g., State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). This rule is subject to various exceptions, one of which is if the witness "has difficulty in understanding the question because of immaturity, age, infirmity or ignorance." *Id.* at 492, 206 S.E. 2d at 236. Furthermore, because of the trial court's opportunity to personally observe the witness, we recognize its superior ability to make a decision on this matter. Its ruling will be disturbed only upon showing an abuse of discretion. *Id.*

An examination of the record in this case shows that Mr. Miller had trouble understanding the gist of the questions posed to him by the State. The answers he gave were often cursory and unresponsive. One portion of the examination of which defendants complain is as follows:

"Q. Now, I hand you State's Exhibit '4' [a photograph] and ask you what that is if you know.

A. It's a Pontiac.

Q. Is that the same Pontiac as State's Exhibit '3?'

A. [Witness nods his head in the affirmative.]

Q. Except a different position?

A. Yea.

Q. And that is your car?

A. Yea.

Q. And where is that sitting?

A. Police Station.

Q. At Elizabethton, Tennessee?

A. Yea."

The trial judge stated for the record, in the absence of the jury, that "the Court in this case finds and has permitted the prosecution latitude and the defendants in cross examination latitude [in] examination of this witness . . . on the ground that the witness has difficulty in understanding the questions because of immaturity, age, infirmity or ignorance and because the examinations [are] directing his attention to the subject at hand without suggesting answers and the mode of questions by both State and defendants is collated to elicit truth." Under the cir-- cumstances, there was no need for the judge to conduct a formal *voir dire* to reach this conclusion. Furthermore, there has been no showing of prejudice to the defendants, *see State v. Young,* 291 N.C. 562, 231 S.E. 2d 577 (1977); therefore, this assignment of error is overruled.

[2] The defendants also contend that the court erred in allowing testimony concerning the offenses they committed in Tennessee some four hours after the crimes for which they were being tried occurred. We do not agree.

The testimony complained of was introduced as the State was trying to show the circumstances under which Mr. Miller's car, which was the subject of the auto larceny charges, and the two guns, which were directly involved in the armed robbery charges, were recovered. This testimony was essential in order to show that the objects at trial were the same as those involved in

the crimes in question before the State could introduce the photographs of the car and the guns themselves into evidence. *See State v. Harbison*, 293 N.C. 474, 238 S.E. 2d 449 (1977). This Court has stated:

> "Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant facts it will not be excluded merely because it also shows him to have been guilty of an independent crime." *State v. Poole*, 289 N.C. 47, 50-51, 220 S.E. 2d 320, 323 (1975) (quoting 1 Stansbury, North Carolina Evidence § 91 (Brandis rev. 1973) ).

This assignment of error is overruled. Defendants' claim that they were entitled to a mistrial because of the admission of the above "prejudicial matter" likewise is without merit.

The defendants bring forth several assignments of error relating to the searches of them conducted in Tennessee after they were arrested in that state.

Defendant Larry claims that the introduction of the gun that was taken from him after being arrested in Tennessee "was remote and unduly prejudicial to the defendant's case before the jury." He cites no authority for this proposition. As we previously stated, the introduction of the guns and the circumstances under which they were obtained by the State were relevant and necessary. This argument is without merit.

[3] Defendant Virginia attacks the search of her person at the Tennessee jail on the ground that the officers lacked probable cause. We cannot agree.

Upon the arrest of defendants, the Tennessee authorities immediately frisked the male defendant and seized the gun that was in plain sight in the waistband of his pants. At that time they also arrested the female defendant for public drunkenness but conducted only a visual search of her, finding and seizing nothing. Jerry Vaughn, a deputy sheriff of Watauga County, went to Tennessee later that morning and informed the officers that he had reason to believe the defendants had two guns. Defendant

Virginia was then searched more fully, and a gun was found concealed in her blouse. It was seized and introduced at trial.

Clearly there was probable cause for the officers to fully search defendant Virginia at this time, and the circumstances were such that it was impractical to obtain a search warrant.

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated." *Chimel v. California*, 395 U.S. 752, 762-63, 23 L.Ed. 2d 685, 694, 89 S.Ct. 2034, 2040 (1969).

The fact that the search was made some six or seven hours after defendant Virginia was arrested did not make it too remote in time or place to be a search incident to a lawful arrest. *See generally Preston v. United States*, 376 U.S. 364, 11 L.Ed. 2d 777, 84 S.Ct. 881 (1964). This assignment of error is overruled.

[4] Defendant Larry argues that the trial court improperly limited his cross-examination of Howard Miller. His complaint relates to the following exchange:

"Q. You need a lot of help, don't you, try and get your story out.

OBJECTION.

SUSTAINED.

Q. Mr. Miller, are you still selling LSD?

A. I don't sell LSD.

OBJECTION.

SUSTAINED.

Q. Are you giving it away?

OBJECTION.

SUSTAINED.

A. I don't have none.

Q. Well, you've sold drugs on several occasions, haven't you?

OBJECTION.

SUSTAINED.

A. I do on numerous occasions take nerve pills which have been prescribed for me.

Q. Oh, so you do take drugs, sometimes?

OBJECTION.

SUSTAINED."

In spite of the fact that the judge sustained the State's objections, the witness answered most of the questions, and no motion was made to strike. Therefore, the defendants had the practical benefit of the evidence and were not prejudiced by the judge's rulings. *See State v. Hodges,* 296 N.C. 66, 249 S.E. 2d 371 (1978); *State v. Edmondson,* 283 N.C. 533, 196 S.E. 2d 505 (1973). The other two questions were merely argumentative or repetitious, and it was within the trial court's discretion to exclude the witness' answers. *See State v. Bumper,* 275 N.C. 670, 170 S.E. 2d 457 (1969). This assignment of error is overruled.

Defendants brought forward other assignments of error to this Court. We have examined them all and find them totally without merit.

[5] We note that Rule 28(b)(2) of the North Carolina Rules of Appellate Procedure requires the appellant to include "a short, non-argumentative summary of the essential facts underlying the matter in controversy where this will be helpful to an understanding of the questions presented for review" in his brief. This is in addition to the requirement that he include a concise statement of the case, dealing with the procedural posture of the case to date. As neither defendant-appellant supplied a factual summary, it was difficult for us to ascertain the facts by sifting through this lengthy record. Thus, our review of this case was more complicated than should have been necessary. *See State v. Siler,* 292 N.C. 543, 234 S.E. 2d 733 (1977).

In defendants' trial we find

No error.

Justice BROCK took no part in the consideration or decision of this case.