STATE OF NORTH CAROLINA v. EDDIE PURNELL AMMONS, JR.

No. COA03-1592

(Filed 4 January 2005)

**1. Evidence— redacted statement—properly admitted**

There was no error in the trial court's admission of a redacted version of defendant's statement which replaced racially derogatory information with a blank. The court had granted defendant's motion in limine to exclude the racial language, so that he received the relief requested, even if he now argues that the court should have used a noun or pronoun instead of a blank to prevent inferences by the jury. Moreover, defendant did not object at trial and does not argue plain error on appeal.

---

STATE v. AMMONS

[167 N.C. App. 721 (2005)]

**2. Homicide— second-degree murder—self-defense—suffi-ciency of evidence**

There was sufficient evidence negating a second-degree mur-der defendant's claim of self-defense where the jury could find that the threat was no longer imminent when defendant acted, and that he lacked a reasonable belief in the threat of serious bodily injury.

**3. Evidence— prior violent behavior—cross-examination—relevance—defendant's evidence of non-violent character**

The trial court did not err in a voluntary manslaughter prose-cution by allowing the State to cross-examine the defendant about his prior violent behavior. Although a claim of self-defense does not automatically put defendant's character for violence or aggression at issue, defendant testified to his character for non-violence and these inquires were relevant to his credibility.

**4. Witnesses— leading questions—ten-year-old**

There was no abuse of discretion in allowing the State to ask leading questions of the ten-year-old son of the victim to refresh his recollection of his statement to an officer. Limiting instruc-tions were given.

Judge THORNBURG concurred before 31 December 2004.

Appeal by defendant from judgment entered 5 May 2003 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 19 October 2004.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John F. Oates, Jr., for the State.*

*Jon W. Myers for defendant-appellant.*

HUNTER, Judge.

Eddie Purnell Ammons, Jr. ("defendant") appeals from a judg-ment dated 5 May 2003 entered consistent with a jury verdict finding him guilty of voluntary manslaughter. Defendant contends the trial court erred in: (I) admitting improperly redacted testimony, (II) deny-ing defendant's motion to dismiss for insufficient evidence, (III) allowing introduction of evidence of alleged prior acts of violence, and (IV) allowing testimony after a child witness' recollection was

refreshed by leading questions. For the reasons stated within, we find no error.

The evidence tends to show that defendant met Allen Roher ("Roher") in December 2000 at a crack house. The two became acquainted through their mutual drug habit and spent considerable time together.

On 9 June 2002, defendant pawned a VCR to Roher for ten dollars, and agreed to pay thirty dollars to redeem the device. A dispute arose over the amount needed to redeem the VCR. On 17 June 2002, Roher asked defendant to come to his house to redeem the VCR. On 18 June 2002, defendant, driven by his uncle, Gerald Locklear ("Locklear"), arrived at Roher's house in a Ford Thunderbird whose passenger side window was broken and could not be rolled up.

Defendant accompanied Roher into his residence and offered thirty dollars to redeem the VCR. Roher then grabbed defendant, refused to return the device, and attempted to throw defendant out. A struggle ensued between the men. During the confrontation, Roher's son appeared at the door and was told to call the police. The struggle between defendant and Roher continued until Locklear entered. Roher then returned defendant's money and asked him to leave.

Defendant exited, followed by Roher, who picked up a bed slat outside the residence. Roher continued to follow defendant as he returned to Locklear's car, and repeatedly swung the slat at him. Defendant attempted to block the swings with his arm, but was struck in the neck by one of the blows. Defendant produced a knife, told Roher to stop hitting him, to keep the VCR, and not to come to his house. Defendant then got into the passenger side of the automobile and asked Locklear to start the engine. Roher continued to strike at the vehicle and defendant as the car backed down the driveway.

Upon reaching the road, the vehicle's engine cut off. As Locklear attempted to restart the car, Roher continued to swing the slat at the vehicle. Defendant stabbed Roher through the heart. The car then pulled away and defendant returned home with Locklear, where he began drinking heavily.

Upon investigation, officers of the Cumberland County Sheriff's Department found injuries to defendant's right arm, including swelling, contusions, and scrapes. Defendant was taken to the sheriff's office and awaited treatment in an interrogation room, which

contained audio and video equipment. Defendant was left in the room with the equipment on for approximately two hours. During that time, defendant made voluntary statements regarding the incident which were recorded and later used at trial.

Defendant was indicted on a charge of second degree murder and convicted of voluntary manslaughter. Defendant was sentenced to a term of 94 to 122 months. Defendant appeals.

I.

**[1]** Defendant first contends that the trial court erred in allowing admission of a redacted version of defendant's recorded statement upon defendant's motion *in limine*. We disagree.

" 'A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct.' " *State v. McNeil*, 350 N.C. 657, 669, 518 S.E.2d 486, 494 (1999) (quoting N.C. Gen. Stat. § 15A-1443(c)).

Here defendant made a motion *in limine* to "exclude any evidence of, or reference to the defendant referring to Allen Roher as a 'Nigger[,]' " in voluntary statements made by defendant about the incident. The trial court granted the motion, permitting the racially derogatory language to be replaced in the statement by a blank. Defendant contends that by inserting blanks in place of the racially derogatory language used by defendant, rather than a noun or pronoun such as Roher's name, the trial court created a prejudicial risk that the jury would understand the purpose of the blank as a veiled racial reference. However, defendant did not object to the substitution of a blank for the racially derogatory language at the time the trial court granted the motion, nor later when the evidence was presented to the jury using the blank. As defendant received the relief requested, he cannot now raise the issue of prejudice resulting from the grant of the motion *in limine*. We find no error in the trial court's admission of the redacted evidence.

Further, even if the question raised had been error, it was plainly waived by defendant. "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991) (citing N.C.R. App. P. 10(b)(1)). "This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *Id.*

As noted *supra,* defendant did not object at the time the blank was inserted into the statement, nor at trial when the statement was presented. Nor does defendant allege plain error. *See State v. Bell,* 359 N.C. 1, 27, 603 S.E.2d 93, 111 (2004) (holding failure to specifically assert plain error will not preserve issue for appellate review). Defendant's failure to object to such a substitution waives his right to appellate review of this issue.

## II.

**[2]** Defendant next contends the trial court erred in denying defendant's motion to dismiss the charge of second degree murder for insufficient evidence that defendant did not act in self-defense. We disagree.

> The State bears the burden of proving that defendant did not act in self-defense. To survive a motion to dismiss, the State must therefore present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that defendant did not act in self-defense.

*State v. Hamilton,* 77 N.C. App. 506, 513, 335 S.E.2d 506, 511 (1985) (citation omitted). " 'In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.' " *State v. Fritsch,* 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000) (citations omitted) (quoting *State v. Barnes,* 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)).

"Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation." *State v. Brewer,* 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991). Perfect self-defense, which provides a complete excuse for a killing, is established when the following elements are found:

> "(1) it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself from death or great bodily harm; and
>
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at that time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

(3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

(4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm."

*State v. Reid*, 335 N.C. 647, 670, 440 S.E.2d 776, 789 (1994) (quoting *State v. McAvoy*, 331 N.C. 583, 595, 417 S.E.2d 489, 497 (1992)).

To negate the defense of self-defense altogether, the State need only prove beyond a reasonable doubt the non-existence of either the first or second element, i.e., either defendant had no belief that it was necessary to kill to save himself from death or great bodily harm, or that defendant's belief, if he had one, was unreasonable because the circumstances as they appeared to defendant were not sufficient to create such a belief in the mind of a person of ordinary firmness. *Id.* at 670-71, 440 S.E.2d at 789.

In the instant case, the evidence, taken in the light most favorable to the State, tends to show that defendant came armed with a sharpened knife to confront Roher in his home over the disputed VCR, and that the confrontation led to a fight between the two men. Roher followed defendant as he left his home and picked up a bed slat which he swung at defendant, hitting defendant four times on the arm. Defendant pulled his knife at this time and told Roher to stop hitting him, then got into the waiting vehicle. Roher continued to hit the car with the bed slat as it pulled down the drive. The vehicle's engine cut off as it reached the roadway. Roher continued swinging the bed slat at the vehicle as it stopped, and defendant produced the lockblade knife, reached outside the window, and stabbed Roher through the heart, while his uncle restarted the engine. Defendant immediately thereafter left the scene without notifying authorities.

In light of this evidence, a jury could find that defendant lacked a reasonable belief in the threat of serious bodily injury or death at the time he stabbed Roher, as defendant had reached the relative safety of the car and such a threat was no longer imminent. Further evidence negating the reasonableness of defendant's belief in the need to kill is found in his hasty departure from the scene. *See State v. Watson*, 338 N.C. 168, 181, 449 S.E.2d 694, 702 (1994) (overruled on other grounds, *State v. Richardson*, 341 N.C. 585, 461 S.E.2d 724

(1995)) (holding such flight would permit a jury to infer defendant harbored a sense of guilt inconsistent with a killing justified on the basis of self-defense). As sufficient evidence of the elements of second degree murder and evidence negating defendant's claim of self-defense were presented, the trial court correctly denied defendant's motion to dismiss the charge of second degree murder and all lesser-included offenses at the close of all the evidence, and the case was properly submitted to the jury for determination of the disputed factual issues.

### III.

[3] Defendant next contends that the trial court erred in allowing the State to cross-examine the defendant regarding his prior violent behavior. We disagree.

A claim of self-defense by defendant does not automatically place his character for violence or aggression at issue. *See State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986). In *Morgan*, the defendant charged with shooting his business partner was cross-examined about an incident three months prior in which he pointed a gun at another individual. *Id.* at 631, 340 S.E.2d at 88. In *Morgan*, the Supreme Court of North Carolina held that such evidence was not admissible under Rule 608(b) of the North Carolina Rules of Evidence, which permits evidence of specific conduct for the purpose of proving credibility of a witness or the lack thereof, "because extrinsic instances of assaultive behavior, *standing alone*, are not in any way probative of the witness' character for truthfulness or untruthfulness." *Id.* at 635, 340 S.E.2d at 90 (emphasis added), *see* N.C. Gen. Stat. § 8C-1, Rule 608(b) (2003). The State, in *Morgan*, also contended such evidence was proper under Rule 404(b), as it was relevant to whether the defendant was the aggressor in the altercation. Id. at 635-36, 340 S.E.2d at 91-92. However the Court found such evidence inadmissible as it served only to prove the defendant's violent disposition, and action in conformity with defendant's character, precisely what Rule 404(b) prohibited. *Id.* at 636-38, 340 S.E.2d at 92-93.

A similar finding was reached in *State v. Mills*, 83 N.C. App. 606, 351 S.E.2d 130 (1986). In *Mills*, the State questioned another witness regarding evidence that the defendant pointed a weapon at the victim three years earlier to show that the defendant's act was premeditated and deliberate under Rule 404(b). *Id.* at 609-10, 351 S.E.2d at 132-33. This Court found the questioning impermissible under Rule 404(b), as

its primary purpose was to show the defendant was the aggressor and did not act in self-defense. *Id.* at 611-12, 351 S.E.2d at 134.

Although evidence of other acts is not permissible under Rule 404(b) to show a propensity for violence solely because a defendant raised the claim of self-defense, such evidence may be used to refute specific evidence of defendant's credibility under Rule 608, when such credibility is at issue. N.C. Gen. Stat. § 8C-1, Rule 608. "A criminal defendant is entitled to introduce evidence of his good character, thereby placing his character at issue." *State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (2000). When the criminal defendant introduces such evidence, "[t]he State in rebuttal can then introduce evidence of defendant's bad character." *Id.* Under Rule 405(a), the State may do so by cross-examining a defendant's character witnesses as to "relevant specific instances of conduct." N.C. Gen. Stat. § 8C-1 Rule 405(a) (2003). The Supreme Court recognized this distinction in *Morgan*, specifically distinguishing the facts of that case from the case of *Atkinson v. State*, 611 P.2d 528 (Alaska 1980), where evidence was admitted that defendant had previously pointed a gun at and threatened two other trespassers, after defendant claimed that he would never point a gun. *Morgan*, 315 N.C. at 638-39, 340 S.E.2d at 92. Further, the Supreme Court of North Carolina distinguished *Morgan* in *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118 (1993), holding that where the defendant testified on direct examination to the positive relationship with his family, the door was opened for cross-examination regarding specific acts of misconduct, and that where a "defendant proffered evidence of his character, including his character for non-violence, the State was entitled to impeach him, in proper order, by rebuttal evidence." *Syriani*, 333 N.C. at 379-80, 428 S.E.2d at 133 (1993).

Here, defendant testified on direct examination that he had "never injured anyone." Defendant's uncle also testified on direct examination that defendant was not a violent person. On cross-examination, defendant was then questioned regarding specific acts of violence towards individuals. Unlike in *Morgan* and *Mills*, where only the issue of self-defense but not the defendant's character were raised, but similar to *Syriani*, where the defendant testified to his character for non-violence, such inquiries in the instant case into prior violent behavior during cross-examination were relevant as to defendant's credibility once defendant placed his character for non-violence at issue. Therefore, the trial court did not err in permitting such inquiries.

IV.

[4] Defendant finally contends the trial court abused its discretion in allowing the State to ask leading questions to a child witness to refresh his recollection of prior statements made to a detective. We disagree.

"It is generally recognized that an examining counsel should not ask his own witness leading questions on direct examination." *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 235 (1974). However, the trial judge has sound discretion to permit such questions and may be aided by guidelines which have evolved over the years as to when counsel should be allowed to lead his or her own witness. *Id.* at 492, 206 S.E.2d at 235-36. These include "when the witness . . . has difficulty in understanding the question because of immaturity, age . . . or . . . the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required[.]" *Id.* at 492, 206 S.E.2d at 236. "[I]n the absence of abuse the exercise of such discretion will not be disturbed on appeal." *Id.* at 492, 206 S.E.2d at 235.

Here, the child in question was ten years old at the time of the trial, and the son of the victim. The trial court permitted the State to ask leading questions of the child after recognizing the tender age of the witness and the child's stated inability to remember the substance of his interview with the police officer who spoke with him on the day of the incident. Further, the trial court provided a limiting instruction to the jury that such questions were only for purposes of corroborating the child's testimony at trial. Therefore, no abuse of discretion is found.

For the reasons stated therein, we find no error.

No error.

Judges WYNN and THORNBURG concur.

Judge Thornburg concurred in this opinion prior to 31 December 2004.