STATE OF NORTH CAROLINA v. JACK HARVEY DAVIS

No. 13

(Filed 7 March 1978)

1. **Criminal Law § 87.2— direct examination of robbery victim—no leading question**

    The district attorney's question directed to a robbery victim which directed her to "relate all of the events as you best recall them" was not a leading question, since a leading question is one which suggests the answer desired and is often a question which may be answered yes or no.

2. **Criminal Law § 99.2— question by trial court—no expression of opinion**

    The trial court did not express an opinion in violation of G.S. 1-180 when a witness testified that her attention was attracted to defendant and his companions as they sat in the restaurant in which she was employed by "their talking dirty and talking loud," and the trial judge asked, "They were what?" since the judge apparently did not hear the witness and was seeking to clarify her testimony for the enlightenment of both the court and the jury, and nothing in the question tended to indicate to the jury that the court had an opinion as to the guilt or innocence of defendant.

3. **Criminal Law § 88.1— cross-examination—defendant's right not improperly limited**

    The trial court did not improperly limit defendant's right of cross-examination by refusing to permit defense counsel to reserve the right to recall a certain witness, by admonishing defense counsel to move on in his cross-examination of a witness, or by sustaining objections to defense counsel's questions which were repetitious and argumentative in nature.

4. **Criminal Law § 116— charge on defendant's failure to testify—instruction given at defense counsel's request**

    While it is the better practice for the trial court not to instruct on defendant's failure to testify, it is entirely proper to give the instruction upon defendant's request, and defendant is not prejudiced where the jury is made aware that the instruction is being given at the request of defense counsel.

State v. Davis

**5. Criminal Law § 66.9—  photographic identification of defendant—no suggestiveness of procedure**

There was no inherent suggestiveness in a pretrial photographic procedure where only six of the fourteen photographs used depicted men with grayish hair similar to defendant's and only the two photographs of defendant did not show a police department name plate, since the narrowing of the witness's choice down to the six photographs in no way indicated to the witness that she should select defendant's photograph from the remaining six, and the absence of a police department name plate in defendant's photograph was not so distinctive a feature as to suggest to the witness that she should select it as depicting the robber.

**6. Criminal Law § 66.1—  identification of defendant—competency of 13-year-old**

The trial court did not abuse his discretion in finding that a 13-year-old who possessed keen intelligence was competent to make an in-court identification of defendant as the robber.

**7. Criminal Law § 66.1—  identification of defendant—witness's opportunity for observation**

A witness was properly allowed to make an in-court identification of defendant where the evidence tended to show that the witness observed defendant at the crime scene for 30 or 40 minutes, though defendant had on a ski mask; the witness subsequently observed defendant go out into a garage where he lifted the ski mask from his face; the garage was lighted and the witness was seated a short distance from the garage; and the witness had keen eyesight and intelligence.

**8. Criminal Law § 66.12—  identification of defendant—courtroom confrontation**

A witness's subsequent absolute confirmation of her earlier photographic identification of defendant was not tainted because it occurred while defendant was seated with two or three lawyers at a table in the courtroom during the preliminary hearing, since no violation of due process results when there are "unrigged" courtroom confrontations which amount to a single exhibition of an accused.

APPEAL by defendant from *McConnell, J.,* 18 July 1977, Criminal Session of STANLY Superior Court.

Defendant was charged in separate bills of indictment as follows: Indictment No. 77CR3735, armed robbery of Alvin Blackmon; Indictment No. 77CR3736, armed robbery of Jeannette Klein; Indictment No. 77CR3737, armed robbery of Mrs. Lois Cohen; and Indictment No. 77CR3894, armed robbery of Julius Cohen. The cases were joined for trial on defendant's motion, and defendant entered pleas of not guilty as to each charge.

The State's evidence tended to show that Mr. and Mrs. Julius Cohen and Mrs. Cohen's mother, Mrs. Jeannette Klein, returned to the Cohen home in Norwood, North Carolina, at about 9:30 p.m. on 27 March 1977 after attending a play at South Stanly High School. The Cohen children and some of their friends had remained in the Cohen home. As they entered the driveway, Mr. Cohen observed a woman crossing his yard. He left the automobile and called to her, and at that moment a man wearing a ski mask and armed with a pistol ordered Mr. Cohen and the other occupants of the automobile into the house. There he directed Mr. and Mrs. Cohen and Mrs. Klein to place their pocketbooks and jewelry in the center of the floor. Mrs. Cohen, upon the gunman's order, pulled the telephone out of the wall and brought him a paper bag. The cash and jewelry consisting of about $500 belonging to Mr. Cohen, approximately $200 to $300 belonging to Mrs. Cohen and approximately $100 belonging to Mrs. Klein together with assorted jewelry belonging to the parties was placed in the paper bag.

Alvin Blackmon, a teenaged friend of the Cohens, came into the house, and the robber took $.50 from him. The masked man at all times kept the pistol in view and indicated that he would kill if his orders were disobeyed. After putting the cash and jewelry into the bag, he ordered Mr. Cohen to accompany him to the yard where he told Mr. Cohen he was going to remove the mask and that he was not to turn around. The robber inquired on several occasions about a safe located in the residence and was told that there was no safe there.

Wendy Caudle, a 13-year-old babysitter, was seated on a couch in the den of the Cohen home. She observed the robber when he lifted his ski mask as he stood near the garage, a distance of 20 to 25 feet from where she was seated. She gave the police an accurate description of this man two days later. Approximately three weeks later, she picked defendant's picture from a group of 14 photographs and thereafter positively identified him at a preliminary hearing. At trial, she also unequivocally identified defendant as the robber.

Martha Swain, who had been charged as an accomplice, testified for the State and said that she, Tom Ashley, a woman named Gallimore and defendant had driven from High Point, North Carolina, to Norwood for the purpose of robbing a safe in

the Cohen home. They ate at a local restaurant in the late afternoon, and she and Ashley, without success, tried to prevail upon defendant to abandon the robbery plans. They proceeded to a point near the Cohen house where defendant gave her a mask and a shotgun with instructions to not let anyone come into the house. About that time, the Cohen automobile came into the driveway and she ran across the driveway. She discovered that Ashley and Gallimore had left. She then ran by a school house, stopped to put the shotgun in a trash can and threw it into some bushes. She was taken into custody by the police after she had walked three or four blocks. She made a statement to the police officers on that night. Her testimony was partially corroborated by a witness who worked in a local restaurant and by police officers.

After defendant had entered the Cohen residence, a young girl by the name of Bebe Crump who was in the back bedroom with one of the Cohen children called the police. Defendant fled when he observed a police car entering the Cohen driveway. A paper bag containing two sets of keys and a diamond ring belonging to the Cohens was found about a mile from the Cohen residence.

Defendant offered no evidence.

The jury returned verdicts of guilty on each of the charges, and the trial judge entered the following judgments: In case no. 77CRS3894, defendant was sentenced to life imprisonment; in case no. 77CRS3737, defendant was sentenced to imprisonment for a period of 60 years to begin at the expiration of the sentence in case no. 77CRS3894; case nos. 77CRS3735 and 77CRS3736 were consolidated for judgment and defendant was sentenced to a prison term of 60 years to run concurrently with the sentence imposed in case no. 77CRS3737.

*Rufus L. Edmisten, Attorney General, by James E. Magner, Jr., Assistant Attorney General, for the State.*

*William C. Tucker for defendant appellant.*

BRANCH, Justice.

[1] Defendant contends that the trial judge erred by permitting the district attorney to ask leading questions.

During the direct examination of the witness Lois Cohen, the district attorney directed her to "relate all of the events as you best recall them." The trial judge overruled defendant's objection, and Mrs. Cohen related, "We saw a woman in the driveway and I stopped the car. I said, 'Julius, I saw . . . .'" Defendant objected and the trial judge permitted the witness to say that she had seen the woman that afternoon. Later in her testimony, Mrs. Cohen inquired of Judge McConnell if she could say what she told her seven-year-old son Robbie. The court allowed her to testify that she told Robbie that, "This was serious, to take my hand and go into the house like the man said."

A leading question is one which suggests the answer desired and is often a question which may be answered by the words "Yes" or "No." *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). Whether counsel may ask leading questions is a matter addressed to the sound discretion of the trial judge and in absence of abuse of that discretion his ruling will not be disturbed on appeal. *State v. Greene, supra; State v. Clanton*, 278 N.C. 502, 180 S.E. 2d 5 (1971). Obviously, the questions here challenged were not leading questions. The witness simply related what she saw and said at the time the crime was in progress. This contention is feckless. Equally without merit is defendant's argument under his assignment of error number 5 that the above questions resulted in prejudicial error to him because they were so overbroad and indefinite as to time that they failed to indicate the area of inquiry to which the questions were addressed.

[2] Defendant argues that the trial judge violated the provisions of G.S. 1-180 during the course of the trial. This assignment of error is based on exception number 59 which points to a question apparently directed to State's witness Donna Russell by Judge McConnell. The witness had testified that her attention was attracted to defendant and his companions as they sat in the restaurant in which she was employed by "their talking dirty and talking loud." The trial judge asked, "They were what?"

It is well settled that the trial judge must abstain from any language or conduct which tends to express an opinion as to defendant's guilt or innocence or which tends to discredit or prejudice the accused with the jury. G.S. 1-180; *State v. Belk*, 268 N.C. 320, 150 S.E. 2d 481 (1966).

When the trial judge questions a witness to clarify his testimony or to promote an understanding of the case, such questioning does not amount to an expression of the trial judge's opinion as to defendant's guilt or innocence. *State v. Everette*, 284 N.C. 81, 199 S.E. 2d 462 (1973); *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied*, 393 U.S. 1087 (1969). Apparently, the trial judge in the case *sub judice* did not hear the witness and was seeking to clarify the testimony of the witness for the enlightenment of both the court and the jury. Nothing in the question tended to indicate to the jury that the court had an opinion as to the guilt or innocence of defendant. This assignment of error is overruled.

[3] By his assignment of error number 11, defendant contends that the trial judge improperly limited his right of cross examination.

A defendant is entitled to a full and fair cross examination upon the subject of the witness's direct examination, and this right is guaranteed by our State and federal constitutions. *State v. Watson*, 281 N.C. 221, 188 S.E. 2d 289, *cert. denied*, 409 U.S. 1043 (1972); *State v. Bumper*, 275 N.C. 670, 170 S.E. 2d 457 (1969). On the other hand, it is the duty of the trial judge to expedite the trial of cases and in performing this duty he may limit repetitious and irrelevant cross examination. Court proceedings should not be hurried in such a manner as to deprive a litigant of his rights, but the court should see that the public time is not uselessly consumed. *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951). The limits of legitimate cross examination are largely within the discretion of the trial judge, and his ruling thereon will not be held error in the absence of a showing that the verdict was improperly influenced thereby. *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970).

The only exception specifically argued by defendant under this assignment of error is exception number 41 relating to the trial judge's refusal to permit defense counsel to reserve the right to recall the witness Julius Cohen. We note that exception 41 was not assigned as a basis for assignment of error number 11 and therefore is not properly before us for consideration. Rule 10A, Rules of Appellate Procedure. In any event, whether a witness may be recalled is in the sound discretion of the trial judge. *Moore v. Bezalla*, 241 N.C. 190, 84 S.E. 2d 817 (1954). Our

further examination of this record discloses that defendant was apparently moving very slowly in his cross examination of the witness Julius Cohen. The trial judge did on several occasions admonish the counsel for defendant to move on. However, it appears that the rulings challenged by the exceptions upon which this assignment of error is based were rulings which sustained objections to questions which were repetitious and argumentative in nature.

Defense counsel had fully and ably cross-examined the witness Cohen before these rulings were made and before defense counsel stated that he had no further questions of the witness but would reserve the right to recall him. Under these circumstances, we hold that the trial judge did not improperly limit defendant's right of cross-examination.

[4] Defendant also assigns as error the court's instruction on defendant's failure to testify.

In this connection, Judge McConnell instructed the jury:

> The defendant's attorney asked me to charge you as to the right of the defendant to testify or not, as he chooses. He did not testify, and the law of North Carolina gives him this privilege. This same law also assures him that his decision not to testify creates no presumption against him. Therefore, his silence is not to influence your decision in any way in this case.

Defendant contends that by stating that defendant's attorney requested the charge, the trial judge negated the effect of the instruction. We do not agree. While it is the better practice for the court not to instruct on defendant's failure to testify, *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976), it is entirely proper to give the instruction upon defendant's request. We are unable to discern prejudicial error because the jury was made aware that the instruction was given at the request of defense counsel.

Defendant's final assignment of error is that the trial court erred by allowing the in-court identification of defendant by the State's witness, Wendy Caudle. He contends that the circumstances under which the witness observed the armed robber on 27 May 1977 combine with the procedure used in a pretrial

photographic lineup to give rise to a substantial likelihood of misidentification.

Following an extensive *voir dire* hearing conducted to determine the admissibility of Wendy Caudle's in-court identification of defendant, Judge McConnell found, *inter alia*:

> . . . that on or about the 27th day of May, 1977 . . . the garage or carport was lighted; that the den was lighted; that Wendy Caudle was seated some short distance from the door to the garage or carport, and that she saw the masked man go out into the garage and just at a point adjacent to the garage and lift his mask, ski mask, from his face, and that she saw him and later described him . . . as being a man 6 feet tall, weighing approximately 180 pounds, with a long pointed nose . . . that on the 17th day of June, she was shown by Officer Farmer and Mr. Burpeau of the State Bureau of Investigation, 14 photographs of white males . . . that she pointed out 2 photographs of the defendant, Davis, and said that they looked like the man and that she could identify him if she could see him in person; that at a preliminary hearing held in connection with this case, she saw the defendant and pointed him out as being the person who was the masked gunman at the Cohen house . . . that Wendy Caudle is a 13-year-old young lady going into the 8th grade; she is intelligent, does not wear glasses, has keen eyesight and keen intelligence . . . and that she was some 20 feet from where she said she saw the defendant; that the defendant was in the residence of the Cohens for some 30 to 40 minutes, at which time the witness, Wendy Caudle, had an opportunity to observe his physique and other features even though he had on a ski mask. . . .

The court concluded that:

> . . . there was ample opportunity for Wendy Caudle to observe the defendant, Davis, on the night of the 27th day of May, 1977, at the Cohen home. Further, that there is nothing to indicate any suggestion by any person which would color the identification of the defendant by the said Wendy Caudle; that there were no illegal identification procedures or lineups involving the defendant; that the first time she saw the defendant in person after May 27 was at the time of the preliminary hearing, at which time she pointed him out as

State v. Davis

the person she had seen at the Cohen home; that the in-court identification of the defendant is of independent origin, based solely on what the witness, Wendy Caudle, saw at the time of the robbery at the Cohen home on May 27 and does not result from any out of court confrontation or from any photograph or from any pretrial identification procedures suggestive or conducive to mistaken identity, and that there is nothing in the process of identification which would deny the defendant the due process of law.

Upon reviewing the evidence presented on *voir dire*, by both the State and defendant, we find that the court's findings are supported by competent evidence and they are, therefore, binding upon us. *State v. Harris*, 279 N.C. 177, 181 S.E. 2d 420 (1971). Nevertheless, the court's conclusions of law are reviewable by us. *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968).

[5] We first turn to the possibility of any inherent suggestiveness in the pretrial photographic procedures. Here defendant contends that the procedure was impermissibly suggestive in that only six of the fourteen photographs used depicted men with grayish hair similar to defendant's and in that only the two photographs of defendant did not show a police department name plate.

Even granting that the photographs used immediately narrowed the witness's choice down to the six photographs of men with grayish hair, we do not perceive how such a limitation in any way indicated to Wendy Caudle that she should select defendant's photograph from the remaining six. The absence of a police department name plate in defendant's photograph is not so distinctive a feature as to suggest to Wendy that she should select it as depicting the armed robber. In fact, more distinctive features such as depicting defendant in different clothing, *U.S. v. Butler*, 405 F. 2d 395 (4th Cir. 1968), *cert. denied*, 396 U.S. 853 (1969), and using a color photograph of a defendant with other black and white photographs, *U.S. v. Lincoln*, 494 F. 2d 833 (9th Cir. 1974), have been held not impermissibly suggestive. Moreover, there appears to be a developing trend of authority which holds that in order to be deemed impermissibly suggestive, the feature which distinguishes a defendant's photograph from the others used must somehow point to the defendant as the perpetrator of, or otherwise connect him with, the crime. See, Annot. 39 A.L.R. 3d 1000, Section 3(b) (1971). We find no evidence

that the procedures used in instant case in any way suggested that defendant should be identified.

[6]  Defendant challenged the competence of the witness Wendy Caudle because of her age.

There is no fixed age limit which renders a witness incompetent to testify. The test is whether the witness has sufficient intelligence to testify and to understand the obligations of an oath. Decision as to the witness's competence rests within the sound discretion of the trial judge and that discretion is not reviewable except upon a clear showing of abuse. 1 Stansbury's N.C. Evidence, Section 55, pages 160-161 (Brandis Rev. 1973). After observing and hearing this witness testify, the trial judge found her to be a 13-year-old young lady who possessed keen intelligence. He thereafter ruled her testimony to be competent. There is ample evidence to support this finding and ruling and no abuse of discretion is shown.

[7]  Defendant further contends that the conditions under which the witness saw defendant's face and the inability of other witnesses to identify the robber are circumstances which render Wendy Caudle's identification of defendant inadmissible. He relies upon *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), to support this contention.

In *Miller*, the Court considered the admissibility of testimony of a witness who was never closer than 283 feet to the accused and had never seen the accused before. The witness was unable to tell the officers the color of the man's clothes, the color of his hair, or the color of his eyes. He described the defendant as being six feet, three inches tall and the accused was actually five feet, eleven inches. In rejecting this testimony as being inherently incredible and without probative value, this Court observed, "Where there is a reasonable probability of observation sufficient to permit subsequent identification, the credibility of the witness's identification of the defendant is for the jury . . . ." 270 N.C. at 732, 154 S.E. 2d at 906.

[8]  In instant case, there was evidence of sufficient opportunity to observe defendant for the witness to make a subsequent identification. Neither do we find merit in defendant's contention that the witness Caudle's subsequent absolute confirmation of her photographic identification was tainted because it occurred while

defendant was seated with two or three lawyers at a table in the courtroom with an alleged accomplice sitting behind one of the lawyers. We have consistently held that no violation of due process results when there are "unrigged" courtroom confrontations which amount to a single exhibition of an accused. *State v. Thomas*, 292 N.C. 527, 234 S.E. 2d 615 (1977); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974). There is nothing in instant record which indicates a rigged confrontation or even a single exhibition of defendant which would violate due process.

We hold that there was no illegal pretrial identification procedure in this case. Had such illegal procedures existed as has been suggested, there is ample evidence to support the trial judge's finding that the in-court identification was of independent origin and therefore competent and admissible.

No error.