STATE OF NORTH CAROLINA v. FLETCHER LEE ROYAL

No. 115

(Filed 15 July 1980)

1. Criminal Law § 66.9— photographic identification—no suggestiveness of procedure

The trial court did not err in failing to suppress the photographic identification of defendant by victims of an armed robbery and assault where the evidence on voir dire tended to show that the victims were positive about their identification at the time they viewed the photographs and selected defendant's picture from among the group; they were not told that the robber was one of the persons in the photographic lineup; there was no evidence that the officer suggested the choice which the victims made; the men portrayed in the photographs were similarly dressed and were photographed in casual surroundings; and all of the evidence on voir dire pointed to the conclusion that the photographs themselves and the procedure surrounding their use did not in any way point to defendant as the perpetrator of the crimes of which he stood accused.

**2. Criminal Law § 66.7— photographic identification—method of obtaining photograph—defendant allowed to make inquiry**

There was no merit to defendant's contention that the trial court erred by not permitting him to inquire into the manner in which his photograph was obtained for use in a photographic lineup, since defendant was permitted to inquire fully into the circumstances surrounding the obtaining of his photograph by law enforcement authorities during the voir dire to determine the propriety of a pretrial photographic identification; that this inquiry was permitted within the context of an ongoing voir dire concerning a related matter was irrelevant to the question of prejudice provided that a complete examination of the challenged facts and circumstances was permitted; and on the basis of evidence presented by defendant, the court specifically found that the photograph in question had been voluntarily given to police by defendant's mother-in-law.

**3. Criminal Law § 66.1— in-court identification of defendant—opportunity for observation**

In a prosecution for assault and armed robbery, the trial court did not err in allowing the three victims to make an in-court identification of defendant, since each of them was able to view the intruder at close range in familiar surroundings which were well lighted over a period of about 45 minutes, and that the observations occurred within the context of confusion and uproar while the crimes were taking place did not render them inherently incredible and thus incompetent as a matter of law.

**4. Criminal Law § 87.1— leading questions**

There was no merit to defendant's contention that the trial court expressed an opinion by overruling his objections to leading questions since most of the questions to which defendant objected did not suggest the answer desired by the interrogator and thus were not leading questions; two of the questions were addressed to an investigator who was subpoenaed by the State but called by defendant, so that it was not an abuse of discretion for the judge to allow the State to ask him leading questions; and defendant did not object to the one truly leading question until after the witness had answered, and even then there was no motion to strike.

**5. Criminal Law § 87.3— use of radio log to refresh recollection—procedure proper**

In a prosecution for assault and armed robbery, the memory of a deputy sheriff was refreshed in a permissible manner where he was handed a radio log sheet for the night of the crimes in question; he identified the document, and then he testified that he was at the sheriff's office when the report came in, and that the dispatcher gave him the call at the time it was logged; moreover, that the document which served to refresh the recollection of the witness had not been made by him did not render the method incompetent.

**6. Criminal Law § 88— limitation of cross-examination—defendant's right to confront accusers not abridged**

The trial court did not deny defendant his right to confront his accusers by sustaining objections by the district attorney to questions propounded by

defense counsel on cross-examination, since the court sustained objections to questions which called for answers which would have been incompetent hearsay, or for expert opinions for which no foundation had been laid, and since much of the questioning was unduly repetitive or argumentative.

### 7. Criminal Law § 86.5— impeachment of defendant—prior criminal acts

In an armed robbery and assault prosecution the trial court did not err in permitting the district attorney to question defendant concerning his kidnapping and robbery of a named person on a certain date, since defendant could be questioned for the purpose of impeachment concerning prior specific criminal acts or degrading conduct for which there had been no conviction.

### 8. Criminal Law § 89.3— corroborative evidence—admissibility

The trial court did not err in admitting testimony of a law enforcement officer concerning his conversation with another law officer about defendant and his statement made while he was in the hospital shortly after commission of the crimes with which he was charged, since the evidence was admissible for corroborative purposes only, and the court properly instructed the jury how they could use it.

Justice BROCK did not participate in the consideration or decision of this case.

Justice EXUM dissenting.

Justice CARLTON joins in the dissenting opinion.

APPEAL by defendant from judgment of *Brown, J.*, imposed at the 8 October 1979 Session of WAYNE Superior Court.

Upon pleas of not guilty, defendant was tried upon bills of indictment proper in form which charged him with the crimes of armed robbery, first-degree burglary, and two counts of assault with intent to kill.

The state introduced evidence summarized in pertinent part as follows:

On the night of 18-19 June 1979 William Nelson Smith lived near Dudley, North Carolina. He owned and operated a used car lot and a service station in Mount Olive, approximately four miles from his home. Three people lived with Smith in his home: his wife, Edna; his fourteen-year-old daughter, Nancy; and his seventy-one-year-old mother, Maybelle.

On the evening of said date, the family retired for bed at about 11:30. Mr. Smith had closed the family business for the night at about 11:00. Upon arriving home, he entered the house

through a storm door and then a back door which opened into the kitchen. The bottom half of the second door was made of wood; the top half consisted of glass panes. After entering the house and locking both doors, Smith proceeded to count out sufficient change for the next day's business activities. That day, he had attended a car show in Kenly, North Carolina, and he had sold six automobiles. At the time he arrived home, Smith had in his possession approximately $20,000 in cash and checks.

At approximately 3:00 the next morning, Smith was awakened by his wife who told him that someone was at the back door, beating on the door and ringing the door bell. As the noise continued, Smith put on a pair of pants and procured a .22 caliber pistol which was not loaded at the time.

When he entered the kitchen, Smith turned on a fluorescent light which brightened the entire room. Upon going to the back door, he pulled the curtain back and looked through the window panes and saw a black man standing on the back steps of the house. The entire backyard was illuminated by a yard light. Immediately thereafter the door was forced open, and Smith was slammed against a kitchen wall. The intruder and Smith scuffled for a few moments. The intruder then shot Smith at close range, wounding him in his jaw. The bullet shattered his jawbone and extensively damaged his gums.

After he shot Smith, the assailant jumped on him and began beating him with a small caliber revolver. In the course of the tussle, Smith was able to look at his assailant. Smith testified that he was able to visualize the image of his attacker several times a day and positively identified defendant as the assailant.

Before he passed out, Smith called out for his wife. Mrs. Smith went into the kitchen, observed the scuffle then in progress, and quickly left the room. She returned to the kitchen carrying a .22 caliber rifle. She tried to shoot the attacker but the weapon would not fire. She then began to beat the man about the head with the rifle. Despite her efforts, the assailant took the rifle away from her and began struggling with her. Defendant then shot Mrs. Smith.

The commotion in the kitchen had awakened Smith's mother who had been sleeping in an upstairs bedroom. As she came down

the stairs and saw the fighting in the kitchen she went into the kitchen, picked up a chair, and hit the man over the head twice with the chair. The blows apparently did not injure defendant because he then turned to the elderly woman and began slapping her about, demanding money. By this time, Mr. Smith and his wife had lost consciousness.

Mrs. Edna Smith regained consciousness after a short while, got up off of the floor, and tried to reach the telephone in the hallway. When she picked up the receiver and began to call for help, defendant jerked the telephone away from her and knocked her to the floor. He struck her several times.

By this time Mr. Smith had regained consciousness and made his way into the bedroom where he procured another .22 caliber revolver. Mr. Smith ran toward the assailant, put the gun up against the intruder's stomach, and fired at least two times. Though the attacker was wounded, he was able to force Mr. Smith back into the bedroom where they resumed fighting. After struggling with defendant for a short while, Mr. Smith gave the intruder all of the money that was in a dresser drawer, more than $12,000.00. The attacker then fled out the back door.

Later that morning, at approximately 5:45, Officer K. R. Edwards of the Goldsboro Police Department was leaving the police station when he observed a brown 1964 Chevrolet drive into the parking lot. The horn was blowing continuously. Officer Edwards walked over to the car where he saw defendant slumped over in the front seat. Defendant got out of the car and the officer was able to see two bullet wounds in the area of defendant's stomach. Defendant's clothes were bloody and his vest was unbuttoned. The interior of the car was bloody, especially near the door on the driver's side. The officer called for the rescue squad and defendant was taken to Wayne Memorial Hospital for treatment.

Defendant offered evidence, including his own testimony which tended to show that:

Defendant was 28 years old at the time of his trial and worked as a loom fixer and mechanic at a textile mill. He was married and lived with his wife and their three children in a trailer park near Goldsboro.

On 18 June 1979 defendant worked at his job from 8:00 a.m. until 4:00 p.m. After he left work he went to a local garage to check on the progress of repairs he was having made to his car, a 1973 Vega. While his car was being repaired, he was driving a brown 1964 Chevrolet which belonged to his friend, David Best. Later on that evening, at approximately 8:00, defendant and his wife went with their children to the home of her mother. The couple stayed about thirty minutes before they left, leaving the children behind to spend the night. Defendant drove his wife to the Mt. Olive Pickle Company where she worked on the night shift. After dropping Mrs. Royal off at the factory, defendant returned home to their trailer and changed clothes after washing himself. He then went to visit his sister-in-law, Eva Blake, at about 11:00 p.m. He stayed there briefly before driving to the Peacock Lounge in Goldsboro, where he stayed until it closed at 3:00 a.m. He then drove around Goldsboro until he came to a self-service gasoline station. Before he could drive away, after filling his tank, a car carrying two men drove in. One of the men asked defendant for change for a five dollar bill. As he searched his pockets for the change, defendant was shot by the driver of the car. After he was shot, defendant was searched by the passenger in the car. The car and its two passengers then left the area. Defendant got back into the car he had been driving and drove to the Goldsboro Police Department where he was found by Officer Edwards.

Defendant was found guilty of armed robbery and two counts of assault with a deadly weapon with intent to kill. The jury was unable to reach a verdict on the charge of burglary, and a mistrial was declared as to that case. Defendant was sentenced to life imprisonment on the armed robbery conviction and two twenty year sentences on the assault convictions. The sentences were to run consecutively.

Defendant appealed and we granted his motion to bypass the Court of Appeals on the assault convictions.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General David Roy Blackwell, for the State.*

*George F. Taylor for defendant-appellant.*

BRITT, Justice.

[1] Defendant contends that the trial court erred in failing to suppress the photographic identification of him by Mr. and Mrs. Nelson Smith on the ground that the procedure was unduly suggestive. This contention is without merit.

Four or five days after the incident at the Smith home, Officer J. S. Flowers, a Special Investigator with the Wayne County Sheriff's Department, went to the Smith's place of business in Mount Olive. While there he produced five photographs, each one of which portrayed black men in casual dress and settings. Officer Flowers asked Mr. Smith if he could identify the robber from among the men portrayed in the photographs. Smith immediately picked out defendant's picture. Though she was in the office at the time, Mrs. Smith was unable to see which photograph her husband had selected. She, in turn, was shown the same five photographs and she too picked out defendant's picture.

A photographic lineup is a constitutionally acceptable component of a criminal investigation. *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968); *State v. Bundridge*, 294 N.C. 45, 239 S.E. 2d 811 (1978); *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972). Such a pretrial identification procedure is inadmissible if it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States, supra; State v. Davis*, 294 N.C. 397, 241 S.E. 2d 656 (1978); *State v. Bundridge, supra; see generally* Annot., 39 A.L.R. 3d 1000 (1971).

The evidence in the case at bar reveals no infirmity in the photographic identification procedure employed. The evidence elicited on *voir dire* establishes that at the time they viewed the photographs and selected defendant's picture from among the group, Mr. and Mrs. Smith were positive about the identification. The evidence further tends to show that the couple was not told that the robber was one of the persons in the photographic lineup. Nor is there any evidence that the officer suggested the choice which the couple made. In addition, the evidence is uncontroverted that the men portrayed in the photographs were similarly dressed and were photographed in casual surroundings. All of the evidence on *voir dire* points to the conclusion that the photographs themselves and the procedure surrounding their use

did not in any way point to defendant as the perpetrator of the crimes of which he stood accused.

In a related assignment, defendant contends that the trial court erred in denying his motion to sequester witnesses who were to testify on *voir dire* as to the photographic identification described above. Defendant argues that the denial of his motion to sequester amounted to an abuse of discretion and a denial of his right to a fair and impartial trial. This argument is without merit.

Upon motion of a party, the trial judge may order all or some of the witnesses other than the defendant, to remain outside of the courtroom until they are called to testify. G.S. § 15A-1222 (1978). A motion to sequester witnesses is addressed to the sound discretion of the trial judge and will not be reviewed on appeal absent a showing of an abuse of discretion. *E.g., State v. Mc-Queen*, 295 N.C. 96, 244 S.E. 2d 414 (1978); *see generally* J. Van Camp & D. Gill, *Criminal Law Symposium: The Trial*, 14 Wake Forest L. Rev. 949 (1978). The record in the present case reveals no abuse of discretion nor does it demonstrate how the denial of defendant's motion to sequester deprived him of his right to a fair trial by an impartial tribunal.

[2] Defendant makes the further contention that the trial court erred by not permitting him to inquire into the manner in which his photograph was obtained for use in the photographic lineup. Defendant made a pretrial motion to suppress the in-court identification of him by Nelson Smith, Edna Smith and Maybelle Smith. During the *voir dire* concerning the identification, defendant moved for a *voir dire* concerning the method by which investigating officers had obtained the photograph of him which had been used in the photographic lineup. The trial judge overruled defendant's motion. We perceive no error.

The record does not support defendant's contention. While it is true that the trial judge denied defendant's motion for a separate *voir dire* on the issue of the procuring of the photograph in question, the record establishes that during the *voir dire* that was held defendant was able to present witnesses, including Officer Flowers, who gave testimony concerning the manner in which the photograph was obtained. At the conclusion of the hearing, the court made findings of fact and conclusions of law. The

court specifically found that the photograph in question had been voluntarily given to the police by defendant's mother-in-law. There is competent evidence in the record to support this finding, and it is conclusive on appeal. *E.g., State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976); *State v. Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975), *death sentence vacated,* 428 U.S. 908 (1976). A separate hearing would have been superfluous. The record indicates that defendant was permitted to fully inquire into the circumstances surrounding the obtaining of his photograph by law enforcement authorities. That this inquiry was permitted within the context of an ongoing *voir dire* concerning a related matter is irrelevant to the question of prejudice provided that a complete examination of the challenged facts and circumstances was permitted. By conducting the procedure in this manner, the trial court was in a position to examine the propriety of the photographic lineup in a contextual fashion rather than as a segmented portion of a larger criminal investigation.

[3] Defendant makes the further contention that the trial court erred by failing to suppress the in-court identification of him by the state's witnesses, Mr. Smith, his wife and his mother arguing that none of the witnesses had a sufficient opportunity to adequately observe the intruder in their home. This contention is without merit.

Before admitting the evidence challenged by this assignment, the trial judge conducted a *voir dire.* At that hearing, Mr. Smith, speaking with reference to his opportunity to observe defendant, testified that when he went into the kitchen because of the knocking at the back door and the ringing of the door bell, he turned on two fluorescent lights; that a yard light was burning at the time which shone upon the back door; that he saw a black man standing outside the back door; that the man burst through the door upon him; that he and the intruder fought; that the intruder was in the house about forty-five minutes; that he saw the assailant about half of that time; and that he described the attacker to law enforcement officers as being 25 to 30 years old, weighing 185 pounds, with a chocolate complexion.

With respect to her opportunity to observe defendant, Mrs. Maybelle Smith testified that she had awakened about four a.m. on the night in question to go to the bathroom; that she heard

someone beating on the back door; that she went downstairs to the kitchen and found that her son, Nelson, had been shot; that a man was beating him about the head with a pistol; that the man was in the house between 35 and 45 minutes; and that she had been close enough to the intruder to touch him.

Mr. Smith's wife testified that she had been awakened by someone beating on the back door and ringing the door bell; that after her husband had gotten up to see what was happening, she heard a loud commotion; that she then got out of bed and went to the kitchen; that she saw defendant; that she went back to the bedroom and got a rifle; that the rifle would not fire; that she turned the rifle around and began beating defendant about his head with it; that defendant took the rifle away from her; and that she was able to look at defendant in the face for "quite awhile."

The trial judge made detailed findings of fact and concluded that the in-court identification of defendant by the state's witnesses was of an independent origin and based solely upon what they had seen at the time of the incident in their home. The state was thereupon permitted to elicit in-court identifications of defendant by its principal witnesses.

In bringing forward this assignment of error, defendant relies upon the case of *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967). *Miller* stands for the proposition that while the question of whether the identification testimony of the prosecuting witness has any probative value is for the jury to decide, the rule has no application where the only evidence which tends to identify a defendant as the perpetrator of the offense is inherently incredible because of undisputed facts clearly established by the state's evidence. 270 N.C. at 731, 154 S.E. 2d at 905.

In *Miller*, the evidence for the state tended to show that the Hall Oil Company in Charlotte was broken into and entered on the evening of 28 September 1966. The exterior of the building and its surrounding grounds were illuminated by nearby streetlights, floodlights at the front and back and spotlights which were attached to its eaves. A vacant lot separated the oil company from a service station by a distance of 286 feet. The only identification evidence was that provided by a sixteen-year-old boy who had picked defendant Miller out of a lineup. Before the night

of the break-in, the witness had never seen the defendant, and he stated that he saw a man run once in each direction, stop in front of the oil company building, peep around it, and then look in the direction of the witness. The witness was unable to describe the color of the man's eyes or hair. Nor was he able to describe the color of the man's clothing except to say that his clothes were dark.

The rule which was enunciated in *Miller* is grounded in sound considerations of logic and policy, and we reaffirm its continued viability in the law of our state. It has no application, however, where there is a reasonable opportunity of observation which is sufficient to permit a subsequent identification. In that event, the credibility of the witness and the probative force of his identification testimony are questions for the jury to resolve. *E.g., State v. Wilson*, 293 N.C. 47, 235 S.E. 2d 219 (1977); *State v. Herndon*, 292 N.C. 424, 233 S.E. 2d 557 (1977); *State v. Cox*, 289 N.C. 414, 222 S.E. 2d 246 (1976).

*Miller* cannot be applied to control the facts of the case at bar. The rationale of *Miller* springs from the obligation of the courts to insure the right of a criminal defendant to a fair and impartial trial. To that end, the *Miller* rule seeks to minimize the possibility of that right being infringed by a misidentification caused by a patently inadequate opportunity for observation.

In the present case the opportunities for observation which were afforded to the state's witnesses were not patently inadequate. Each of them was able to view the intruder at close range, in familiar surroundings which were well lighted, over a period of about 45 minutes. That the observations occurred while a break-in and a series of assaults were in progress does not render them incompetent as a matter of law. The observations occurred within the context of confusion and uproar which is inherent in the nature of violent criminal acts for which defendant stands accused of committing. To require that such observations be made in a casual manner, as defendant argues should be the case, would be unreasonable.

[4] Defendant contends next that the trial judge expressed an opinion by overruling his objections to leading questions of the district attorney to such an extent and degree so as to deny him a fair and impartial trial. We disagree.

A leading question is a question which suggests its desired answer. *E.g., State v. Davis*, 294 N.C. 397, 241 S.E. 2d 656 (1978); 1 Stansbury's North Carolina Evidence § 31 (Brandis Rev. 1973). It remains the general rule that leading questions may not be asked on direct examination. *E.g., State v. Davis, supra; State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977). However, it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and, in the absence of a showing of abuse, the exercise of such discretion will not be disturbed on appeal. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972); 2 Wharton's Criminal Evidence 412 (13th ed. 1972). In exercising his discretion, the trial judge is aided by guidelines which have evolved over the years in our reported cases. Writing for the court in *State v. Greene, supra*, Justice (now Chief Justice) Branch stated that

> . . . counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth.

285 N.C. at 492-93, 206 S.E. 2d at 236.

It would serve no useful purpose for us to set out in detail the multitudinous questions about which defendant now complains. Upon examining each of them in light of the guidelines enunciated in *State v. Greene, supra*, we conclude that there was no abuse of discretion. The bulk of the questions which defendant characterizes as leading in nature cannot be so portrayed in that they do not suggest the answer desired by the interrogator. Insofar as the other questions are concerned, two of them were asked

of Officer Flowers on cross-examination by the assistant district attorney. The investigator had been called as a witness by defendant even though he had been subpoenaed by the state. It is well established that a party does not make a witness his own by subpoenaing him and not calling him, *see State v. Tilley*, 239 N.C. 245, 79 S.E. 2d 473 (1954), and if he is later interrogated by another party, he becomes the latter's witness. 1 Stansbury's North Carolina Evidence § 41 (Brandis Rev. 1973). That being the case, it was not an abuse of discretion for the judge to allow the state to ask the investigator leading questions. In the remaining instance of a truly leading question, defendant did not object until after the witness had answered. Even then, there was no motion to strike. There was no error.

Nor was it error for the trial court to permit Nelson Smith to testify concerning his wife's actions during the robbery. Our examination of the record leads us to conclude that Smith was testifying from first-hand knowledge as to what his wife did during the course of the incident in their home. That he cast his testimony in terms of shorthand statements of fact concerning her movements does not mean that it was incompetent. *See generally* 1 Stansbury's North Carolina Evidence § 125 (Brandis Rev. 1973). By so doing, Smith was attempting to convey to the jury in a comprehensible fashion his recollections of the events of 19 June. It would be unreasonable to require a witness to recount in minute detail all of the events which he had observed during the commission of a violent crime. To do so would be to fly in the face of the inherent confusion and disorientation of such incidents. That Smith testified that he was intermittently unconscious during the robbery is a relevant consideration only insofar as it relates to the questions of credibility and probative weight, both of which are considerations to be made by the jury subject to proper instructions.

[5] Defendant contends that it was error to receive into evidence the radio log for 19 June 1979 of the Wayne County Sheriff's Department. We disagree. When the log itself was received into evidence after being properly authenticated, *see generally* 1 Stansbury's North Carolina Evidence § 153 (Brandis Rev. 1973), defendant made no objection. The exceptions which are preserved for our review deal only with the log sheet being handed to Deputy Sheriff Fane S. Greenfield while he was on the witness stand.

Deputy Greenfield was dispatched to the Nelson residence when the incident was reported to law enforcement authorities. At the time the report came in, he was at the sheriff's department. On redirect examination, the officer was handed a document which he recognized as the radio log sheet for 19 June 1979. Upon identifying the document, Deputy Greenfield stated that it served to refresh his recollection as to the time that the call for help came into the sheriff's office; that the call came in at 3:41; and that the dispatcher gave him the call at the time it was logged. By this procedure, the memory of the deputy was refreshed in a permissible manner. *E.g., State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977); *see generally* 1 Stansbury's North Carolina Evidence § 32 (Brandis Rev. 1973). That the document which served to refresh the recollection of the witness had not been made by him does not render the method incompetent. *State v. Smith, supra.* The right of cross-examination and the right to examine the document used in the practice are sufficient safeguards against improper practices or suspicious circumstances which may be associated with refreshing the memory of a witness. McCormick's Handbook of the Law of Evidence § 9 (2d ed. 1972).

[6] Defendant also contends that the trial court erred by denying his fundamental right to confront his accusers by cross-examination when it sustained objections by the district attorney to questions propounded by defense counsel on cross-examination of the state's witnesses. We disagree.

While defendant brings forward twenty-one exceptions within this assignment of error, the governing principle remains the same as to each: The scope of cross-examination rests in the discretion of the trial judge, and his rulings thereon will not be disturbed absent a showing of abuse of discretion. *State v. Britt,* 291 N.C. 528, 231 S.E. 2d 644 (1977). While it is axiomatic that the cross-examiner ought to be allowed wide latitude, the trial judge has the responsibility to exercise his discretion in such a way that unduly repetitive and argumentative questioning, as well as inquiry into matters which are only peripherally relevant, are banned. *E.g., State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972); 1 Stansbury's North Carolina Evidence § 35 (Brandis Rev. 1973). The record in the case at bar reveals that defendant cross-examined each of the state's witnesses at great length. In numerous instances where the trial judge sustained objections of

the district attorney to questions by defense counsel, the questions called for answers which would have been incompetent hearsay or expert opinions for which there had been no foundation laid. At other times, the questioning was unduly repetitive or argumentative. There was no abuse of discretion.

[7] Defendant contends that the trial court erred by permitting the district attorney to question him concerning prior acts of misconduct. This contention is without merit. On recross-examination the district attorney asked defendant if he had kidnapped and robbed Mr. Robert Knowles of $1,125.00 on 24 May 1979. Defendant denied having committed the specified acts. On redirect examination, defendant testified that he had been arrested and charged with the crimes of kidnapping and robbing Knowles but that there had been a finding of no probable cause and the charges had been dismissed.

It is an established principle of the law of evidence that when a criminal defendant elects to testify in his own behalf, he is subject to cross-examination, for the purpose of impeachment, with respect to prior specific criminal acts or degrading conduct for which there has been no conviction. *State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. Mayhand*, 298 N.C. 418, 259 S.E. 2d 231 (1979); *State v. Purcell*, 296 N.C. 728, 252 S.E. 2d 772 (1979). Such questions are permissible provided that they are asked in good faith. *State v. Herbin, supra; State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971).

In the present case there was no error. The question was directed at a matter within the defendant's own personal knowledge and was asked for the purpose of impeachment. Defendant denied having committed the acts in question and the prosecutor was bound by the answer. *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977).

[8] Defendant contends that the trial court erred by admitting over his objection the testimony of Officer Edwards as to a conversation he had with Officer Edwin O. Bundy of the Goldsboro Police Department. There was no error. After defendant had been taken to Wayne Memorial Hospital for treatment of his gunshot wounds, Officer Bundy talked with him. At that time the policeman was not involved in the investigation of the incident at the Smith residence. Defendant told the officer that he had been

robbed and shot at a self-service gasoline station. Defendant gave the location of the station to the officer. Thereupon, Officer Bundy determined that the station was located outside the Goldsboro city limits and was within the jurisdiction of the Wayne County Sheriff's Department. Having made that determination, he informed defendant that the investigation would thereafter have to be handled by the sheriff's department and that he would report it to them. Shortly thereafter, the policeman had occasion to talk with Officer Edwards. At that time, Bundy told Edwards what defendant had said about the location of the service station. Bundy went on to tell Edwards that he had turned the investigation over to the sheriff's department because the purported crime had occurred outside of the Goldsboro city limits. On rebuttal, both officers testified: Bundy as to the conversation he had with defendant in the hospital; Edwards as to the conversation he had with Bundy.

Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980). The introduction of prior consistent statements is an accepted manner of corroborating the testimony of a witness. *E.g., State v. Medley*, 295 N.C. 75, 243 S.E. 2d 374 (1978); *see generally* 1 Stansbury's North Carolina Evidence § 51 (Brandis Rev. 1973). Prior consistent statements are admissible if they are generally consistent with the witness' own testimony. *State v. Britt, supra; State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975), *death sentence vacated*, 428 U.S. 904 (1976).

In the case at bar, the threshold test of consistency was met. Furthermore, the trial judge properly instructed the jury that Officer Edwards' testimony was offered for corroborative purposes only, and they were to use it for that purpose only if they found that it did so.

Defendant lastly contends that the trial court erred by denying his motions to dismiss, for judgment notwithstanding the verdict, for a new trial, and for arrest of judgment. These motions are formal in nature and dependent upon the substantive assignments of error brought forward in the brief. There was sufficient evidence at trial to withstand these motions and they were properly denied.

No error.

Justice BROCK did not participate in the consideration and decision of this case.

Justice EXUM dissenting.

The trial court erred prejudicially, in my view, when it permitted cross and recross examination of defendant regarding his alleged kidnapping and robbery of Robert Knowles. The incident occurred at the very end of defendant's testimony as follows:

"Q. Did you not on the 24th day of May, 1979, kidnap and rob one Robert Knowles of $1,125.00?

MR. TAYLOR: Objection.

COURT: Overruled.

EXCEPTION NO. 55.

A. No, sir.

REDIRECT EXAMINATION (By Mr. Taylor)

I was charged with kidnapping and robbing Mr. Knowles. Mr. Knowles testified under oath that he could not identify me as the man who robbed him. He did testify to that and no probable cause was found in the District Court of Wayne County. The charges were dismissed. Those charges were brought against me after I was arrested on these charges.

RECROSS EXAMINATION (By Mr. Jacobs)

Mr. Knowles did testify that I looked like the man but he wasn't a hundred percent sure. He told the court that. He said he wouldn't stake his life on it. He didn't say I looked like the man. He said, the officer, Officer Stan Flowers brought him some photographs and said I had been charged with something that happened, was a suspect and he asked him to look at the photographs to recognize me. No, sir, he didn't say that I looked like him."

Our rules have long been that a criminal defendant who testifies may be cross-examined about prior criminal convictions

or other acts of misconduct provided (1) the questions are asked in good faith, *i.e.*, the questioner reasonably believes that defendant actually was convicted or actually committed the act of misconduct asked about, and (2) defendant's unequivocal denials are conclusive; although some "sifting" of an evasive answer is permitted. *See, generally, State v. Lynch,* 300 N.C. 534, 268 S.E. 2d 161 (1980); *State v. Currie,* 293 N.C. 523, 238 S.E. 2d 477 (1977); *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971). The examination of the witness, however, must not be permitted to evolve into a mini-trial on the question of defendant's guilt of the collateral misconduct. *See State v. Monk,* 286 N.C. 509, 517, 212 S.E. 2d 125, 132 (1975); 1 Stansbury's North Carolina Evidence, § 112 (Brandis Rev. 1973). The jury should not be distracted nor the defendant prejudiced by injecting into the trial the collateral question of whether defendant is guilty of some other crime for which he is not then being tried. A defendant may not, furthermore, be cross-examined about mere charges, indictments, or accusations of crime which have not resulted in convictions. *State v. Williams, supra.*

It is undisputed here that defendant had been at some prior time charged with kidnapping and robbing one Robert Knowles. It is likewise undisputed that at a probable cause hearing on the charges Knowles could not identify defendant as his assailant and the charges were consequently dismissed for want of probable cause. It is obvious from the prosecutor's recross examination that he knew of the dismissal and the reason for it. The prosecutor so far as the record reveals had no reason to believe that defendant actually kidnapped or robbed Knowles. His asking about the incident must have been motivated by his desire to put before the jury the fact that defendant had been charged with an offense similar to the one for which he was being tried. The prosecutor did not ask the question in good faith. He was also permitted, in effect, to ask defendant about mere charges or accusations in violation of the holding in *Williams.*

The trial judge, furthermore, permitted the matter to deteriorate, impermissibly, into a mini-trial on the question of defendant's guilt of the kidnapping and robbery of Knowles. The prosecutor was permitted to violate our rule that defendant's unequivocal denial is conclusive. This is a likely result whenever cross-examination is permitted concerning an incident which has

already been the subject of a criminal prosecution against defendant and which has terminated on the merits in his favor.

I have consistently urged, unsuccessfully, that the court not permit cross-examination concerning alleged acts for which defendant has been formally charged and acquitted. *See State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979) (Exum, J., concurring); *State v. Ross*, 295 N.C. 488, 246 S.E. 2d 780 (1978) (Exum, J., dissenting, joined by Sharp, C.J., and Lake, J.); *see also, State v. Leonard*, No. 96, Spring Term 1980 (filed 3 June 1980) (Copeland, J., dissenting, joined by Exum, J., and Carlton, J.). In *Ross* then Chief Justice Sharp and Justice Lake joined in my dissent expressing this view. I continue to believe as I wrote in my concurring opinion in *State v. Herbin, supra,* 298 N.C. at 453, 259 S.E. 2d at 271:

> "When one has been tried for and acquitted of a particular crime that should end the matter for all purposes. A person so acquitted should not be required continually to defend himself against the charge in subsequent criminal proceedings in which he may become involved."

In most cases, albeit not all, *see, e.g., State v. Herbin, supra,* this kind of cross-examination will severely prejudice the defendant. It is all too tempting for a jury, particularly in a close case such as the one now before us, to resolve against defendant whatever doubt it may have when it believes that defendant may have previously committed acts of criminal misconduct or, for that matter, may have merely been charged with having committed them. The jury reasons that a man who has previously been implicated in criminal activity is more likely than not to be guilty in the case before it. Our law, recognizing the fallacy of this reasoning, has long prohibited the State from offering defendant's earlier criminal acts as evidence against him when the sole purpose is to predispose the jurors to convict him of the crime for which he is then being tried. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

Those experienced in criminal trials know well that placing this kind of information before a jury even on cross-examination for purposes of impeachment has the same devastating effect as if the evidence had been offered in the State's case in chief. A defendant's past criminal record is quite often the major con-

sideration in determining that he should not testify and subject his case to the revelation of his prior criminal acts even if he maintains and would testify to proclaim his innocence in the case on trial. It is for this reason that prosecutors continue to seek every way imaginable to get such information before the jury, and defense lawyers try mightily to keep it out of the trial. Courts should be assiduous to guard against permitting its admission unless it truly serves some legitimate purpose and clearly comports with our well-established rules limiting its use.

In this case, as in *Ross, Herbin* and *Leonard,* I fear the Court has gone too far in permitting the introduction of this kind of evidence in disregard of heretofore well-established principles limiting its use.

I am satisfied defendant was prejudiced by the improper introduction of the evidence; therefore, I vote for a new trial.

Justice CARLTON joins in this dissent.