STATE OF NORTH CAROLINA v. BEVERLY ELAINE TATE

No. 350A82

(Filed 7 December 1982)

1. **Criminal Law § 73.2— statements by another—admissibility to show reason for defendant's actions**

In a prosecution for various offenses which arose from defendant's alleged delivery of methaqualone at a garage and body shop, testimony by defendant as to what the garage owner said to her should have been admitted by the trial court to show why defendant left the garage so quickly, since the statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statements are made. However, the exclusion of such testimony was harmless error because defendant was allowed to explain her hasty departure by other testimony before the jury, and because the fact that she left the garage so quickly bore little or no weight as to whether defendant had delivered drugs to the garage owner.

2. **Criminal Law § 90.2; Witnesses § 4— necessity for voir dire to determine whether witness was hostile witness**

It was prejudicial error for the trial court to deny defendant's motions for a voir dire to determine whether a defense witness, to the surprise of defense counsel, was unwilling to answer certain questions before the jury which were relevant to the defense and was thus a hostile witness whom defense counsel could ask leading questions.

APPEAL by the State of North Carolina pursuant to N.C.G.S. 7A-30(2) from the decision of the Court of Appeals (*Judges Robert Martin* and *Arnold* concurring, *Judge Vaughn* dissenting), reported in 57 N.C. App. 350, 291 S.E. 2d 326 (1982), which overruled the judgment entered by *Walker, Judge*, at the 3 August 1981 Criminal Session of FORSYTH Superior Court and granted a new trial to defendant.

Defendant was charged in separate indictments, proper in form, with conspiracy to trafficking in methaqualone, trafficking

by delivery of methaqualone, trafficking by possession of methaqualone, and trafficking by transportation of methaqualone. Upon verdicts of guilty, the charges were consolidated for judgment, and the defendant was sentenced to imprisonment for not less than five nor more than ten years and to pay a fine of $25,000.

Evidence presented by the state tended to show that undercover agent M. D. Robertson had arranged to purchase 1,200 tablets of methaqualone from Donald Watson at his garage and body shop on 23 January 1981. Watson told Robertson that the woman who supplied him with drugs for resale would make a delivery about noon that day. Robertson and another agent began surveillance of the garage at noon. The defendant arrived at 12:20 p.m., entered the garage, and then came out within a minute. The undercover agents noticed that when she entered the garage, the defendant's hand was in her coat as though she were carrying something. There was a bulge in her coat about the size of a rolled up newspaper or a book. When the defendant came out of the garage, her hands were outside the coat and the bulge was gone. After defendant left, Watson motioned Robertson inside, where Robertson purchased the 1,200 tablets of methaqualone.

The defendant's evidence tended to show that she went to Watson's garage on 23 January 1981 to make her monthly payment for car repairs and to discuss some problems with Donald Watson concerning the repairs. The defendant denied delivering any controlled substances to Watson.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and John F. Maddrey, Associate Attorney, for the State appellant.*

*Morrow and Reavis, by John F. Morrow, for defendant appellee.*

MARTIN, Justice.

[1] The trial judge would not permit the defendant to testify concerning a conversation she had with Donald Watson upon entering the garage. Upon voir dire the defendant stated that had she been allowed to do so, she would have testified:

> When I entered Mr. Watson's office and I pushed the bag across and sat down on the corner of his desk and I

started to talk to him about when he could possibly repaint the roof of my car, and Don told me, he said, "I have some urgent business to take care of." He said, "If you're going up to the barbecue stand with my brother to eat lunch, as soon as I get finished with it, I'll be right, come up there with you and I'll be glad to come up with a date we can repaint your car." So he rushed me, he literally rushed me out of the office, and he said there was a guy waiting outside and he had something to take care of.

The Court of Appeals held that the trial judge's exclusion of this testimony was error and that it prejudiced the defendant because it was the only evidence tending to show why the defendant left the garage so quickly. We find this holding erroneous because, although the trial judge did err in excluding the testimony, there is no reasonable possibility that had the testimony been allowed into evidence a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a) (1978).

The Court of Appeals correctly held that the defendant's excluded testimony as to what Donald Watson said to her would have been admissible to show why defendant left the building so quickly. The statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statements were made. *State v. White*, 298 N.C. 430, 259 S.E. 2d 281 (1979); *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977). However, the exclusion of this testimony was harmless error because Tate was allowed to explain her hasty departure by other testimony that was before the jury: Immediately before going into the garage, Tate saw Frank Watson standing in front of a truck in the parking lot of the garage. She noticed that he "was in very bad shape," and told him that "[she] was going to run in the office and give Don $200.00 and . . . would be right back out and help him walk up to the barbecue stand . . . ." She further testified that when she went into the garage:

> I sat down on the desk and I happened to push and put my hands on a bag that was sitting there and push something and immediately was told something. I said, "Listen, I'll come back and give you the $200.00 after you got finished taking care of what you got to take care of. I'm going up to the

barbecue stand with your brother and when you have finished doing what you got to do, come up and get me and then I'll finish talking to you about my vehicle." At the point, I not only went to talk to Don about giving him the $200.00 for my car, but when he originally decided to paint my car, he and I made an agreement if there was anything not satisfactory to me that he would repaint it.

This testimony offers an explanation similar to that of the excluded testimony as to why she stayed such a short time in the garage. It also tends to show that the "bag" was already on Watson's desk when she entered the garage. Her excluded testimony is susceptible of the interpretation by the jury that she brought the bag into the garage: "When I entered Mr. Watson's office and *I pushed the bag across* . . . ." (Emphasis ours.) The exclusion of the tendered testimony was not prejudicial to her defense. Defendant has failed to show that there is a reasonable possibility that had the error not been committed a different result would have been reached at the trial. N.C. Gen. Stat. § 15A-1443(a) (1978); *State v. Culpepper*, 302 N.C. 179, 273 S.E. 2d 686 (1981). We note that the fact that she left the garage quickly — for whatever reason — bore little or no weight as to whether the defendant had delivered the drugs to Donald Watson. The opinion of the Court of Appeals is modified to the extent that it conflicts with this holding.

[2] We agree, however, that a new trial is required. Defendant called Charles Ronnie Watson (no relation to Donald or Frank Watson) to the stand and hoped to elicit from him testimony to the effect that he was fairly sure that the person who had brought the drugs to Donald Watson was not Beverly Tate. Before trial Charles Ronnie Watson told defense counsel in the presence of others that he would so testify, but when questioned before the jury and to counsel's surprise, he was unwilling to do so. When defense counsel attempted to ask Watson leading questions, the trial judge sustained the state's objection each time. Defense counsel then moved several times for a voir dire hearing to establish that Charles Ronnie Watson was a hostile witness. The trial judge denied each of these motions. We hold that the trial judge's denial of these motions was prejudicial error, and for this reason the defendant is entitled to a new trial.

It remains the general rule in this jurisdiction that counsel may not ask his own witness leading questions on direct examination. *E.g., State v. Royal,* 300 N.C. 515, 268 S.E. 2d 517 (1980); *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974). The purpose of this rule is to prevent counsel from putting a desired answer into the mouth of a witness he has called to testify. *State v. Greene, supra;* 1 Brandis on North Carolina Evidence § 31 (1982). However, it is also well established in this state that in his discretion the trial judge may allow counsel to ask leading questions of his own witness and, in the absence of abuse, the exercise of such discretion will not be disturbed on appeal. *E.g., State v. Batts,* 303 N.C. 155, 277 S.E. 2d 385 (1981); *State v. Royal, supra; State v. Greene, supra; State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972). As Justice Branch (now Chief Justice) stated in *Greene:*

> The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth.

285 N.C. at 492-93, 206 S.E. 2d at 236. *See also, e.g., State v. Royal, supra.*

In the present case, had the trial judge allowed a voir dire examination of Charles Ronnie Watson, defense counsel might have been able to demonstrate that to his surprise the witness was unwilling to answer certain questions before the jury which were very relevant to Tate's defense. Ralph E. Tate testified in the absence of the jury:

Mr. Ronnie Watson told Mr. Morrow that he was pretty sure he knew who brought the stuff out there to Don Watson's, and he was afraid to tell, that he would get shot. And he knew it was not Beverly. I do remember that you specifically asked him if he would testify to that. I thought he said he was going to, but he wouldn't when he got up here. You told him he did not have to name a name. He said he'd do it, but he wouldn't name the name.

If he had been able to establish this, defense counsel should have been permitted to ask leading questions of Watson during direct examination. *State v. Greene, supra.* These questions would have enabled defense counsel to bolster Tate's defense that she was not the person who delivered the drugs to Donald Watson on the day in question. Although defendant's argument is not based upon constitutional premises, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi,* 410 U.S. 284, 302, 35 L.Ed. 2d 297, 312 (1973). *Cf.* 1 Brandis, *supra,* § 40. We find that it was prejudicial error for the trial judge to deny defendant's motions for a voir dire to determine whether Watson was a hostile witness.

The opinion of the Court of Appeals is

Modified and affirmed.